IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

PIONEER SERVICES, INC.,              )
                                     )
      Plaintiff,                     )
                                     )    CIVIL ACTION NO.: 2:06-cv-377-WKW
v.                                   )
                                     )
AUTO-OWNERS INSURANCE                )
COMPANY, INC., et al.,               )
                                     )
      Defendants.                    )

## BRIEF AND STATEMENT OF UNDISPUTED FACTS OF DEFENDANT, AUTO-OWNERS INSURANCE COMPANY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**COMES NOW** Defendant, Auto-Owners Insurance Company (Auto-Owners), and files this brief and statement of undisputed facts in support of Auto-Owners' motion for summary judgment filed contemporaneously herewith in this cause as follows, to wit:

### A.    STATEMENT OF UNDISPUTED FACTS

This action and Plaintiff's amended complaint relates to contents damage to property Plaintiff, Pioneer Services (Pioneer), alleges to have sustained in Hurricane Ivan on September 16, 2004, and which Plaintiff alleges is covered under a Tailored Protection Insurance Policy, Policy No. 034617-38525851 issued by Defendant to Pioneer Telephone Services, Inc., for the policy term 06-16-2004 to 06-16-2005. Plaintiff's president, Jimmy Williamson,  set aside in his shed the contents/equipment which are the subject of this action, but discarded the equipment in hoboes/dumpsters after November 15, 2004 but before December 16, 2004. Mr. Williamson's personal contents and personal structure claims were paid by Auto-Owners as was Pioneer's structure claim. This action relates to Pioneer's contents claim.

Plaintiff's amended complaint alleges breach of contract (Doc. 1-2 at p. 57) in Count One and bad faith (Doc. 1-2 at p. 58) in Count Two. The allegations of fraudulent inducement (Doc. 1-2 at p. 60) in Count Three and misrepresentation (Doc. 1-2 at p. 63) in Count Four as well as Defendant South Central Agency were dismissed by order of the Circuit Court for Covington County, Alabama, on April 13, 2006. See, Doc. 1-2 at p. 162. The remaining cause of action alleged in Plaintiff's amended complaint (Count V) is not directed at Auto-Owners and is alleged against only fictitious party Defendants. See, Doc. 1-2 at p. 66-67; see also, Doc. 1-2 at p. 162. The following is Auto-Owners' statement of undisputed facts which Auto-Owners asserts are dispositive of the claims and issues in this case and entitle Auto-Owners to the entry of summary judgement as a matter of law in Auto-Owners' favor:

    1.    Auto-Owners Insurance Company issued a Tailored Protection Insurance Policy, Policy No.: 034617-38525851 to Pioneer Telephone Services, Inc., for the policy term 06-16-2004 to 06-16-2005 which provided certain insurance coverage as defined and limited in the policy and subject to the limitations, exclusions, conditions and terms therein. Auto-Owners asserts as a defense to the claims of the Plaintiff the terms, conditions, exclusions, limitations and entire contents of the policy which is at issue in this case. Without waiving any of the terms, conditions, or limitations of the policy, Auto-Owners sets forth the following specific policy provisions contained in the subject insurance policy and in defense of Plaintiff's claims:

[Endorsement CP 00101091]

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

2

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered. Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance

***

## A.    COVERAGE

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1.    Covered Property

Covered Property, as used in this Coverage Part means the following types of property for which a limit of Insurance is shown in the Declarations:

**a.    Building**, meaning the building or structure described in the Declarations, including;

***

**b.    Your Business Personal Property** located in or on the building described in the Declarations or in open (or in a vehicle) within 100 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property - Separation of Coverage form:

***

[G-AO00027 L10,[1] see also, Exhibit "J"]

---

[1]The subject Auto-Owners insurance policy was Bates Stamped AO00001-AO00071 and was marked as a Deposition Exhibit in its entirety by Plaintiff and/or Defendant (i.e., Pioneer Depo. Ex. 11; Auto-Owners Depo. Ex. 3). For ease of reference by the court and to avoid duplicate submission to the extent possible, the pertinent pages are referenced herein by the pertinent "AO" Bates Stamp page number and submitted in sequential order. These documents are attached as Exhibit "G" to the Auto-Owners' Evidentiary Submission. A certified copy of the policy and the authenticating affidavit of Drew Klasing are attached as Exhibit "J"

### E.     LOSS CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions

### 1.     Abandonment

There can be no abandonment of any property to us.

***

### 3.     Duties In The Event Of Loss Or Damage

**a.**     You must see that the following are done in the event of loss or damage to Covered Property:

***

**(4)**     Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss   If feasible, set the damaged property aside and in the best possible order for examination    Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

**(5)**     At our request, give us complete inventories of the damaged and undamaged property  Include quantities, costs, values and amount of loss claimed

**(6)**     As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

***

**(8)**     Cooperate with us in the investigation or settlement of the claim.

4

[G-AO00032 L 11]

\*\*\*

[Endorsement CP009007 88]

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY

## COMMERCIAL PROPERTY CONDITIONS

\*\*\*

**D.    LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part  unless:

1.    There has been full compliance with all of the terms of this Coverage Part; and

\*\*\*

[G-AO00039 L 1]

[Endorsement IL 00171185]

## COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

\*\*\*

**B.    CHANGES**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent.  This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy

[G-AO00066 L 1]

[CP 10 30 10 91]

## CAUSES OF LOSS - SPECIAL FORM

***

## A.    COVERED CAUSES OF LOSS

When Special is shown in the Declarations, Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

1.    Excluded in Section B , Exclusions; or

2.    Limited in Section C , Limitations;

that follow.

## B.    Exclusions

1.    We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

***

g.    **water**

(1)    Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

***

2.    We will not pay for loss or damage caused by or resulting from any of the following:

a.    Artificially generated electric current, including electric arching, that disturbs electrical devices, appliances or wires.

[G-AO00042 L 1]
Plaintiff acknowledged receipt of the insurance policy and the opportunity to read

6

the insurance policy. See, A-Depo. of Williamson at p. 100 L 2, 16 and 23.[2]

2.     Mr. Jimmy Williamson was at times material to this action the president of Pioneer Telephone Services, Inc., who is incorrectly named in Plaintiff's amended complaint as Pioneer Services, Inc. See, A-Depo. of Williamson at p. 15 L 19-16 L 6; 17 L 6-L 12; Doc. 1-2 at p. 55 ¶ 1. Mr. Williamson obtained his Bachelor of Science Degree from Troy State University Dothan in Social Services in 1997. See, A-Depo. of Williamson at p. 20 L 19; p. 26 L 19; p. 64 L 23.

3.     In anticipation of Hurricane Ivan, Defendant Auto-Owners prepared preprinted Catastrophe Loss Notice (CAT) forms for insureds within the anticipated affected area. See, G-AO00113[3]; see also, B-Depo. of Reaves at 158 L 14; 166 L 23; 167 L 8-12; C-Depo. of Barrett at p. 66 L 9-23; 67 L 1-12.

4.     As of 7:30 p.m. September 16, 2004, Pioneer had not sustained any damage to its building or contents and Mr. Jimmy Williamson, the owner of the Pioneer, had not sustained any damage to his home. See, A-Depo. of Williamson at p. 158 L 11.

5.     Mr. Williamson returned to the office of Pioneer after the storm at 8:00 a.m. on September 17, 2004. See, A-Depo. of Williamson at p. 164 L 5-9.

---

[2]The citation A-Depo. of Williamson at p. 100 L 2, 16 and 23 and similar citations herein refer to Auto-Owners' Evidentiary Submission Exhibit "A" and page 100 thereof at lines 2, 16 and 23.

[3]The subject Auto-Owners claims file was Bates Stamped AO00073-AO00299 and was marked as a Deposition Exhibit in its entirety by Plaintiff and/or Defendant (i e , Pioneer Depo. Exs 3-7 and 10; Auto-Owners Depo. Ex. 3). For ease of reference by the court and to avoid duplicate submission to the extent possible, the pertinent pages are referenced herein by the pertinent "AO" Bates Stamp page number and submitted in sequential order. These documents are attached as Exhibit "G" to the Auto-Owners' Evidentiary Submission.

6.    Mr. Williamson was not at his office after 7:30 p.m. on September 16, 2004 the night before the storm until around 8:00 a.m. on September 17, 2004 after the storm had passed and the alleged damage occurred. See, A-Depo. of Williamson at p. 158 L 7 - 159 L 6; 163 L15-164 L 9.

7.    On September 17, 2004, a catastrophe (CAT) loss notice was submitted on behalf of Pioneer Telephone Services, Inc., to Auto-Owners which stated "roof damage. Water damage to the inside. Antenna's broken off." See, G-AO00113. Mr. Tomberlin, who is the South Central Agency independent agent located next door to Pioneer, went to Pioneer on September 17, 2004 to check on his client and saw water on four or five boxes of equipment out of thirty to fifty boxes. See, D-Depo. of Tomberlin at p. 125 L 3-128 L 5.

8    Auto-Owners assigned the investigation and adjustment of the loss to GAB Robins on September 20, 2004  See, B-Depo. of Reaves at p. 176.

9.    A representative of GAB Robins contacted the insured on September 21, 2004. See, G-AO00150; B-Depo. of Reaves at p 176 L 11-21.

10.    A representative of GAB Robins, Phillip Gauthier, performed an inspection of Plaintiff's premises on or about September 23, 2004. See, G-AO00150; B-Depo. of Reaves at p. 176 L 15-23.

11.    Mr. Williamson acknowledged it was after September 20, 2004 when lists regarding a potential contents damage claim were provided. See, A-Depo. of Williamson at p. 258 L 15-17. In fact, Mr. Williamson testified it was October 29, 2004 when he started looking at the contents damaged at Pioneer because Pioneer had been "so busy trying to take care of everybody else." See, A-Depo. of Williamson at p. 254 L 1-19; 259 L 7-L 22

12.    GAB Robins prepared a report dated December 5, 2004 describing loss to

8

the structure of Pioneer Telephone Services, Inc.,[4] and estimating the total loss to be $11,607.92 (after deductible). G-AO00150. The amount of the alleged structure loss of Pioneer was subsequently paid by Auto-Owners and is not the subject of this lawsuit. See, F-117. Mr. Williamson testified he was paid for the damage to the Pioneer buildings. A-Depo. of Williamson at p. 248 L 10-L 16; 320 L 15-L 18.

13.    On November 8, 2004, Bill Reaves was at the office of a local independent agency and was handed several invoices that Mr. Williamson had provided for personal property and inventory that Pioneer stated was damaged in the storm. See, B-Depo. of Reaves at p. 165 L18-L20; 182 L 15-183 L 7. The documents Mr. Reaves was provided were lists of items dated October 29, 2004 and entitled "Invoice" by Pioneer (G-AO00181-AO00184 and G-AO00191-AO00192) and lists entitled Lightning Affidavits (G-AO00185-AO00190 and G-AO00193-AO00194) with one designated lightning damage (G-AO00194) and the other designated water damage (G-AO00190). The documents entitled invoice contained lump sum totals. See, G-AO00184 and AO00192.

14.    On November 15, 2004, Bill Reaves a claims representative for Auto-Owners met with Jimmy Williamson of Pioneer Telephone Services, Inc., and viewed personal property and inventory that the insured claimed was damaged in the September 16, 2004 storm. See, B-Depo. of Reaves at p. 185 L 6-186 L 6. At this time, the insured had moved the personal property and inventory stated to have been damaged to a storage building at his house. Some of the equipment was boxed in packages and no damage was apparent

---

[4]Although the claim for damage to the structure was submitted by Pioneer Telephone Services, Inc., Mr. Jimmy Williamson testified that he was actually the owner of the structure located at 1833 East Three Notch Street, Andalusia, Alabama See, Depo. of Williamson at p 117 L10-L19; 269 L7-270 L 3.

to him. See, B-Depo. of Reaves at p. 202 L 11-210 L 8. See, A-Depo. of Williamson at p. 224 L 13-225 L 2; 275 L 17-276 L 5. Mr Williamson testified the equipment was in "just" a corner of his shed. See, A-Depo. of Williamson at p. 282 L9-283 L 5. Mr. Reaves told Mr. Williamson at their November 15, 2004 meeting that additional information was needed including a breakdown of prices. See, B-Depo. of Reaves at p. 183 L15-188 L 1; G-AO00112 L 10-11. Mr. Reaves subsequently received a breakdown from Pioneer G-AO00199-AO00204.

15.    On December 1, 2004, Mr. Williamson and his wife were issued checks in the total amount of $37,744.80 ($19, 050.32 and $18, 694.48) for damage to their home and contents relating to Hurricane Ivan on a separate claim and insurance policy. See, F-113 and 114. This claim is not the subject of this action and Mr Williamson is more than satisfied with Auto-Owners' handling of that claim. See, A-Depo. of Williamson at p 233 L 22-234 L 9; 240 L 12-15; 245 L 4-246 L 16. This lawsuit is about the contents of Pioneer Services See, A-Depo. of Williamson at p. 233 L 22-234 L 2.

16.    Bill Reaves of Auto-Owners contacted electrical engineer, Larry Dewberry, of Franklin Engineering on or about December 9, 2004 to inspect the damaged property and give his opinion regarding the nature of the damage. See, B-Depo. of Reaves at p. 216 L 8-L 11; G-AO00110.

17.    Sometime between November 15, 2004 and December 16, 2004, Mr. Williamson threw away the equipment in the corner of his shed because he "was needing the space for Christmas." Depo. of Williamson at p 301 L 5-L 21.[5]

_____

[5]Mr. Williamson testified his independent agent, John Tomberlin told him " that since three adjusters had looked at it, taken pictures of it, that he didn't see a problem with throwing it away . ."

18.    Mr. Dewberry contacted Mr. Williamson of Pioneer and was advised that Mr.
Williamson had thrown away the equipment. See, I-affidavit of Larry Dewberry; see also,
A-Depo. of Williamson at p. 309 L 8-310 L 11. Mr. Dewberry contacted Bill Reaves of
Auto-Owners on December 16, 2004 and advised Mr. Reaves that the insured had thrown
all the property away and no longer had the property. See, G-AO00110 L 11-13; B-Depo
of Bill Reaves at p. 271 L 17- 23 [6]

19.    After learning of the disposal of the equipment and communication with Mr.
Dewberry, Mr. Reaves contacted Auto-Owners' Home Office. See, B-Depo. of Reaves at
p. 229, 257 L 2-7. Mr. Reaves also verified with the independent agent that they did not
tell Mr. Williamson he could throw away the equipment. See, B-Depo. of Reaves at p. 260
L17-261 L 16; see also, D-Depo. of Tomberlin at p. 123 L2-L 12; E-Depo. of Young at p.
124 L 7-125 L 3.

---

See, A-Depo. of Williamson at p. 301 L 5 -L 21. Mr. Reaves testified he told Mr. Williamson to hold
on to the property. See, B-Depo. of Reaves at p. 209 L 11-210 L 8. Mr. John Tomberlin testified
he never spoke to Jimmy Williamson about disposal of the equipment until after Mr. Williamson had
already thrown the equipment away. See, D-Depo. of Tomberlin at p 123 L 2-125 L 2. He also
testified that he never told Mr. Williamson that it would be acceptable for him to dispose of any
damaged equipment. See, D-Depo. of Tomberlin at p 123 L 2-L 6. Mr. Tomberlin also testified Mr.
Reaves never told him that Mr. Williamson could throw equipment away. See, D-Depo. of
Tomberlin at p. 130 L 19-131 L6. The three adjusters to whom Mr. Williamson refers are Mr.
Cleveland whom he acknowledged handled his home claim (See, A-Depo. of Williamson at p. 233
L 8-11, 240 L 4-241 L 17), Mr. Gauthier who Mr. Williamson testified said he was only looking at
Pioneer Structure claim. (See, A-Depo. of Williamson at p. 239 L20-240 L3; 247 L15-18; 262 L10-
L23) and Mr. Reaves

[6]As stated above, Mr. Williamson stated in his deposition that the independent agent, John
Tomberlin, told Mr. Williamson that he could dispose of the property. The independent agent, John
Tomberlin, testified that he did not tell Mr. Williamson that the property could be thrown away and
testified that he did not even discuss Mr. Williamson's disposal of any property with Mr. Williamson
until after Mr. Williamson had already disposed of the property. See, D-Depo. of Tomberlin at 124
L18-125 L 3; 130 L19-131 L6. South Central Agency was dismissed as a defendant in this action
and thereby exonerated of any wrong against Plaintiff. See, Doc. 1-2 at p 162.

11

20.   Mr. Williamson and Pioneer staff discarded the equipment in hoboes/dumpsters.  Depo. of Williamson at p. 335 L21-336 L3.[7]

21.   After learning of Pioneer's disposal of the equipment by Pioneer, Auto-Owners field claims representative, Bill Reaves, also wrote Pioneer Telephone Services, Inc., on December 20, 2004 advising the insured that Auto-Owners had received the estimate from the independent adjuster for "your building damage" which he enclosed for the insured to review.  See, G-AO00205 L 7-9; F-102.  The insured was requested to call Mr. Reaves following review of the estimate.  See, id.  The December 20, 2004, letter to the insured also addressed the disposal of the alleged damaged equipment. id. at L 13. The letter requested that the insured provide Auto-Owners with outside documentation and evidence of the damages along with a salvage value for the property. id. at L14.  The December 20, 2004 letter also set forth pertinent conditions contained in the policy regarding the retention and inspection of property. See, G-AO00205 L15 - AO00206 L 6; F-102  The December 20, 2004, letter also contained a reservation advising the insured that Auto-Owners did not waive any rights or defenses under any policy of insurance issued by Auto-Owners. See, AO00206 L 7.

22.   In response to Mr. Reaves' request for outside documentation, Pioneer submitted affidavits and documents similar or identical to Pioneer's list from Tel-Com Services. See, B-Depo. of Reaves at p. 223 L 6-224 L 21   See, G-AO00123-AO00127, 130-131, 142-144.  Mr. Reaves reviewed the documents and saw the Tel-Com "Lightning Affidavits" were signed Mac Bracewell, but initialed SWP.  See, B-Depo. of Reaves at p.

_____

[7]The equipment was stored in a corner of Mr. Williamson's shed on November 15, 2004 and discarded by Pioneer before December 16, 2004 when Mr. Dewberry contacted the Plaintiff.

222 L 8-9. Mr. Reaves also found out Mr. Bracewell was a prior owner of Pioneer. See,
B-Depo. of Reaves at p. 226 L 20-227 L 11. Mr. Williamson testified SWP was the initials
of Sheila who at the time worked for both Pioneer and Tel-Com. See, A-Depo. of
Williamson at p. 295 L 13-296 L 2   She also prepared the Pioneer "Invoices" and
"Quotations." See, A-Depo. of Williamson at p 255 L 11-L16; See, G-AO00181 and
AO00274. In fact, Mr. Bracewell was out of town when the Tel-Com list was prepared.
See, A-Depo. of Williamson at p. 207 L 1-12.

23.     On December 21, 2004, Mr. Reaves also wrote a report to Auto-Owners'
Home Office. See, G-AO00109.

24.     On January 18, 2005 Auto-Owners paid Pioneer Telephone Services, the
sum of $11,607.92 in full payment of the structural damage (less a deductible of
$1,000.00). See, F-117; See, A-Depo of Williamson at p. 248 L10-14; 320 L 7-L 18.

25      Bill Reaves spoke to a Home Office representative on January 27, 2005 and
agreed to run a lightning strike report See, G-AO00111.

26.     On January 31, 2005, Auto-Owners claim representative Bill Reaves,
requested that Compu-weather provide a lightning strike data report to Auto-Owners for
the location at 1833 East Three Notch Street, Andalusia, Alabama 36420 for the period
September 15, 2004 at 4:00 p.m to September 17, 2004 at 4:00 p m. See, G-AO00145
L 26-L 27.

27.     Compu-weather provided Auto-Owners with a Strikenet Report 78828 on
February 2, 2005 advising Auto-Owners that for the period September 15, 2004 at
16:00:00 EDT to September 17, 2004 at 15:59:59 EDT "lightning was not detected within
the search area and time span" and "no strikes [were] detected within the search area."

13

See, G-A0118-120.

     28.    On February 3, 2005, Auto-Owners field claim representative, Bill Reaves,

wrote the insured the following letter:

> February 3, 2005

> Dear sir or Madam:

> We have completed our investigation of the above referenced claim. You are insured under Auto-Owners Insurance Co. with policy number 38525851 with effective dates of 6-16-04 to 6-16-05. Your Tailored Protection Policy has personal property limits of $76, 950 00 with $500 deductible.

> We have completed our investigation of the lightning claim you submitted for $21,575.72. As part of our investigation we ordered a lightning strike report from Compu-Weather, Inc. that included the time period from 9-15-04 at 4:00 p.m. through 9-17-2004 3:59:59 p.m. According to their report no lightning was detected within a 5 mile radius of your location. Therefore, since lightning was not detected in that area we must regretfully deny this portion of the claim.

> As to the portion of the claim you submitted to us for the damaged inventory totaling $34,915.53 we have been unable to have this damage verified by an expert. Under your policy the following in contained:

> **3.    Duties In The Event Of Loss Or Damage**

> > **a.**    You must see that the following are done in the event of loss or damage to Covered Property:

> >               ***

> **(4)**    Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim  This will not increase the Limit of Insurance.

**(6)**    As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

It is my understanding that you have disposed of these items and they are no longer available for inspection.  As we were not given the opportunity to have these items inspected by an expert to determine the exact damages we must deny this portion of the claim.

If there is any additional information you believe to be relevant to the question of coverage, or if you believe that any of the facts or information stated, upon which Auto-Owners has relied is not accurate, please advise

All rights, terms, conditions, and exclusions in your policy are in full force and effect and are completely reserved.

Thank you for your time and consideration in this matter.  If you need any further assistance, please give me a call at 1-800-548-9881 ext. 204.

Sincerely,

Bill Reaves
Field Claim Rep.

See, G-AO00244-5; F-104-105.

29.    Suit was filed on behalf of Pioneer Services, Inc., Jimmy Williamson, and Kelly Williamson, against Auto-Owners Insurance Company Inc., and South Central Agency, Inc., on April 26, 2005, in the Circuit Court of Covington County of Alabama, Civil Action No.: CV-05-110 (Doc. 1-2 at p. 8).  Plaintiff, Pioneer Services, Inc., filed a motion to amend the complaint on or about December 19, 2005. (Doc. 1-2 at p. 53).  The Plaintiff's motion to amend complaint was granted on January 10, 2006.  Doc. 1-2 at p. 124).

Plaintiff Jimmy Williamson and Kelly Williamson were eliminated from the lawsuit pursuant to the amendment. (Doc. 1-2 at p. 53-55 and 124).

30.    Plaintiff's amended complaint alleges breach of contract (Doc. 1-2 at p. 57) in Count One and bad faith (Doc. 1-2 at p. 58) in Count Two. The allegations of fraudulent inducement (Doc. 1- at p. 60) in Count Three and misrepresentation (Doc. 1-2 at p. 63) in Count Four as well as Defendant South Central Agency were dismissed by order of the Circuit Court for Covington County, Alabama, on April 13, 2006. See, Doc. 1-2 at p. 162 The remaining cause of action alleged in Plaintiff's amended complaint (Count V) is not directed at Auto-Owners and is alleged against only fictitious Defendants. See, Doc. 1-2 at p. 66-67; see also, Doc. 1-2 at p. 162.

31.    Thus, the only claims pending before this Court are the claims of Pioneer Service1s, Inc., against Auto-Owners Insurance Company for breach of contract (Doc. 1-2 at p. 57) and bad faith (Doc. 1-2 at p. 58) regarding the contents claim of Pioneer Telephone Services, Inc [8] See, A-Depo of Williamson at p. 233 L 22-234 L2.

32.    Auto-Owners' investigation revealed there was no lightning or lightning strike within five miles of Pioneer's premises. G-AO00118-AO00120. The affidavit of Auto-Owners' expert Mr. Sherman, a meteorologist, has been submitted as Exhibit "H" which further demonstrates the absence of any lightning at the time of Plaintiff's alleged loss. See, H-1. The affidavit of Auto-Owners' expert Mr. Dewberry, an engineer, demonstrates that he was unable to confirm the presence of lightning damage or water damage and

---

[8]As stated earlier, Mr. Williamson's personal Hurricane Ivan claim for which he was paid in excess of $37,000.00 by Auto-Owners is not the subject of this suit. See, ¶ 15 at p.10, infra Nor is the structure claim relating to the Pioneer's building which was paid by Auto-Owners in the amount of $11,607.92 the subject of Pioneer's complaint. See, ¶ 24, at p. 13, infra.

that is unlikely the equipment was exposed to such damage. See, I-1-4. Plaintiff has also failed to meet its burden of proving a direct physical loss by a covered cause of loss regarding Pioneer's claim of water damage.

## B.    BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I.    Standard Of Review

Rule 56 of the *Federal Rules of Civil Procedure* concerning Summary Judgment states, in pertinent part:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

F. R. Civ. P. 56(c). The Eleventh Circuit has followed the direction provided by Rule 56 saying, "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994); see also, Castleberry v. Goldome Credit Corp., 408 F. 3d 773, 785-6 (11th Cir. 2005). An issue of material fact is "genuine" only if "a reasonable trier of fact, considering the record evidence, could find for the non-moving party." Lee v. Etowah County Bd. Of Educ., 963 F 2d 1416, 1425 (11th Cir. 1992). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986); Jeffery v. Sarasota

White Sox, Inc., 64 F.3d 590, 593 (11th Cir. 1995); Edwards v. Wallace Community College, 49 F.3d 1517, 1521 (11th Cir. 1995).

A party may not defeat a motion for summary judgment simply by restating the allegations of the pleadings. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348 (1986). A court ruling on a motion for summary judgment must believe the evidence of the non-movant and draw all justifiable inferences from the evidence in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505 (1986). The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See, Fed. R. Civ. P. 56(c).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis by the Court). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." Id. at 249. A fact is not material unless it is identified by the controlling substantive law as an essential element of the non-moving party's case. Id. at 248. In this regard, "[i]t should be noted that conclusory allegations based on mere subjective beliefs do not create a genuine issue of material fact." Carter v. Miami, 870 F.2d 578, 585 (11th Cir. 1989); Ramsey v. Leath, 706 F.2d 1166, 1170 (11th Cir. 1983). See also, Earley v. Champion International Corp., 907 F.2d 1077, 1081 (11th Cir. 1990) (collecting cases). The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion against a party failing to make a showing sufficient to establish the existence of an

element essential to that parties' case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986).

Insurance companies have the right to limit their liability. See Aetna Ins. Co. v. Pete Wilson Roofing & Heating Co., Inc., 289 Ala. 719, 272 So. 2d 232 (Ala. 1972). Under Alabama law, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy coverage. See Colonial Life & Acc. Ins. Co. v. Collins, 194 So. 2d 532, 535 (Ala. 1967). If there is no ambiguity, an insurance contract must be enforced as written, and courts should not defeat expressed provisions in a policy, including exclusions from coverage, by making a new contract for the parties. See Altiere v. Blue Cross and Blue Shield, 551 So. 2d 290, 292 (Ala. 1989).

In the context of a bad faith action substantial evidence is not simply bad judgment or negligence by an insurer, but instead imports a dishonest purpose and means a breach of known duty (i.e., good faith and fair dealing, through some motive of self-interest or ill will). Singleton v. State Farm Fire & Cas. Co., 928 So. 2d 280, 283 (Ala. 2005). In short, the plaintiff must go beyond a mere showing of nonpayment of proceeds and prove a bad faith nonpayment, a payment without any reasonable ground for dispute. National Sec. Fire & Cas. Co. v. Bowen, 417 So. 2d 179, 183 (Ala. 1982).

## II.    Auto-Owners Is Entitled To Entry OF Summary Judgment In Auto-Owners' Favor As To Plaintiff's Claim Alleging Breach Of Contract

Contracts for insurance are governed by the same general rules as other contracts. Pate v. Rollison Logging Equip., Inc., 628 So 2d 337 (Ala. 1993); Pacific Mut. Life Ins. Co. of California v. Strange, 226 Ala. 98, 145 So. 425 (1932); Mobile Marine Dock & Mut. Ins. Co. v. McMillan & Son, 27 Ala. 77 (1855). Insurance contracts, like other contracts, are

19

construed to give effect to the intention of the parties thereto, and when the intention is clear and unambiguous, the policy must be enforced as written. State Farm Mut. Auto. Ins. Co. v. Lewis, 514 So 2d 863 (Ala. 1987); Southern Guar. Ins. Co. v. Wales, 283 Ala. 493, 218 So.2d 822 (1969); McGifford v. Protective Life Ins. Co., 227 Ala 588, 151 So 349 (1933); Day v. Home Ins. Co., 177 Ala. 600, 58 So. 549 (1912). Courts do not have the right to add or to take anything from insurance policies. Canal Ins. Co. v. Old Republic Ins. Co., 718 So.2d 8 (Ala. 1998); Alabama Farm Bureau Mut. Cas. Ins. Co. v. Goodman, 279 Ala. 538, 188 So.2d 268 (1966).

Construction of an insurance policy is a question of law for the Court. Id. There is a presumption that the insured is familiar with the provisions of its insurance policy and acquainted with its contents. See, Kanellis v. Pacific Indem. Co., 917 So. 2d 149, 154 (Ala. Civ. App. 2005), citing, Hartford Fire Ins. Co. v. Shapiro, 270 Ala. 149, 155, 117 So. 2d 348, 354 (1960) (if an insurance policy is accepted by the insured, the insured is bound thereby despite divergence from preliminary negotiations because "an insured is presumed to be familiar with the provisions of its policy.").

In order for an insured to recover for breach of contract, the alleged insured is required to prove: 1) the existence of a valid contract binding the parties, 2) his own performance under the contract, 3) the defendant's non-performance under the contract, and 4) resulting damages. See, State Farm Fire and Cas. Co. v. Williamson, 926 So. 2d 1008, 1013 (Ala. 2005).

    **a.**    **As A Matter Of Law The Insured Cannot Meet Its Burden Of Proving Coverage Under The Auto-Owners Policy And Auto-Owners Is Entitled To Summary Judgment**

In a case such as the one at issue, the insured or the party claiming coverage has the burden of submitting substantial evidence showing that the claimed loss or damage for which the insured is seeking coverage fits within the insuring language, the term of the policy and the definitions in the policy so that the loss falls within the coverage of the policy. State Farm Fire & Cas. Co. v. Shady Grove Baptist Church, 838 So.2d 1039 (Ala. 2002). If the insured or party claiming coverage does not meet its burden of proving by substantial evidence that its claimed loss or damage falls within the coverage of the policy, a judgment must be entered in favor of the insurance company. Id. In contrast, if the insurance company is relying on an exclusion, then the insured or party claiming coverage first has the burden of showing that the covered loss or damage falls within the coverage of the policy and then the burden shifts to the insurance company to prove the applicability of the exclusion. Id. If an insured only proves several possible causes or reasons for a loss, some covered and some not covered, the insured or party claiming coverage has failed to meet its burden of proof and judgment must be entered in favor of the insurance company. Id. In this case Plaintiff cannot meet its burden of proving coverage.

In this case, it is undisputed that the president and owner of Pioneer threw away the items which are the subject of its claim in direct contravention of the terms of the insurance policy, and despite the fact that such items were critical evidence to its claims for coverage. The insurance policy expressly required Pioneer "to take all reasonable steps to protect the Covered Property ... [and] if feasible, set the damaged property aside." The insurance policy also expressly required Pioneer, as "often as may be reasonably required, permit [Auto-Owners] to inspect the property ... [and] to take samples of damaged and undamaged property for inspection, testing and analysis...." Pioneer's action is undisputed

to have been taken within thirty days or less of its first meeting with Auto-Owners representative Bill Reaves to discuss its commercial contents claim  Although Pioneer asserts having received authority to do so from an independent agent, and which is vehemently denied by the independent agent, it is undisputed Auto-Owners gave no authority to Pioneer to dispose of the equipment.  It is undisputed that prior to disposal of the equipment Pioneer and Mr. Williamson did not obtain permission from Mr. Reaves or anyone else with Auto-Owners to dispose of the equipment.

In this case Pioneer is required to submit substantial evidence that it sustained a direct physical loss to covered property caused by or resulting from a covered cause of loss.  Pioneer's president, Jimmy Williamson, has testified that certain equipment was damaged by water, or a power surge or a lightning hit.  See, A-Depo. of Williamson at p. 179 L1-24; 181 L 21-182 L 3.  Mr. Williamson testified there was no exterior evidence of lightning at his office.  See, A-Depo  of Williamson at p  187 L 17-19.  He also testified that water came in the ceiling and down the walls  See A-Depo. of Williamson at p. 188 L 6-L 15.  Mr. Williamson also testified that some of the alleged damage could be surge on or off the premises. See, A-Depo  of Williamson at p. 201 L 15-17.  He also testified some it would have been water damage.  See, Depo. of Williamson at p. 203 L 18-L120  He also stated he has seen lightning damage to property only up to a mile away. See, A-Depo. of Williamson at p. 201 L 20-L 22.

In State Farm Fire and Cas. Co. v. Shady Grove Baptist Church, 838 So. 2d 1039 (Ala. 2002) analogous facts were presented.  In Shady Grove the insured brought an action against State Farm regarding the collapse of a church roof.  The Alabama Supreme Court held the trial court erred in denying State Farm's motion for judgment as a matter of law.

The Court stated the church had the burden to submit substantial evidence that the collapse was covered under the policy by virtue of causes provided in the policy. Id. at p 1043. The Court further stated the church failed to do so because it elicited several possible causes, but substantial evidence of any one cause was not presented. Id. at 1046

Further, because Pioneer has failed to preserve the items, and has identified no expert by the expert disclosure deadline which will testify that Pioneer suffered direct physical loss to covered property caused by or resulting from a covered loss, Plaintiff cannot prove the allegations of its complaint for either breach of contract or bad faith. In contrast, Auto-Owners' investigation revealed there was no lightning or lightning strike within five miles of Pioneer's premises. G-AO00118-AO00120. The affidavit of Auto-Owners' expert Mr. Sherman, a meteorologist, has been submitted as Exhibit "H" which further demonstrates the absence of any lightning at the time of Plaintiff's alleged loss. Plaintiff has not shown the presence of lightning at Pioneer's premises and has identified no expert that will testify thereto. Auto-Owners has also submitted Exhibit "I", the affidavit of engineer Larry Dewberry, which demonstrates that lightning damage or water damage was unlikely. Plaintiff testified he saw signs of possible lightning, or electrical surge damage (A-Depo. of Williamson at p 201 L 15-L17), but this testimony of alleged loss by only a potentially covered cause does not satisfy Plaintiff's burden of proving a direct physical loss to covered property caused by or resulting from a covered cause of loss. Regarding the Plaintiff's alleged water damage, plaintiff has also failed to produce evidence of a direct physical loss, and Mr. Dewberry's affidavit establishes that such is unlikely Again, Plaintiff has failed to meet its burden of proving a direct physical loss to

23

covered property caused by or resulting from a covered cause of loss.

    **b.**    **Auto-Owners Is Entitled To Summary Judgment Because Pioneer Is Estopped from Asserting Coverage Or Is Precluded From Seeking Coverage Under The Policy Based Upon Pioneer's Spoliation Of Evidence**

In this case, Pioneer was aware of Auto-Owners' investigation of the claim, was aware of its desire to inspect the property, aware of the equipment's significance in relation to the claim and was presumptively aware of the terms of the insurance contract. See, Kanellis v. Pacific Indem. Co., 917 So. 2d 149, 154 (Ala. Civ. App. 2005). By Pioneer's action of throwing away the items which are the subject of its action, Pioneer threw away crucial evidence, and has made it impossible for Auto-Owners to defend against Pioneer's claims that the items were damaged by and/or that such damage was caused by a covered cause of loss. Under these circumstances, Plaintiff's action is due to be dismissed.

In an analogous case, Capitol Chevrolet, Inc. v. Smedley, 614 So. 2d 439 (Ala. 1993), the Supreme Court of Alabama reversed a verdict in favor of an insurer and against a manufacturer where the insured ordered destruction of items that were critical evidence in the company's action against the manufacturer. In Smedley the insurer (Auto-Owners) was pursuing a subrogation claim for breach of warranty and under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD) against GM and the dealer that sold a conversion van. The van was destroyed by fire and the insurer paid its insured for the loss and the insured in turn signed a subrogation agreement. Id. at 441. Shortly thereafter, and before the filing of its lawsuit, the insurer authorized the disposal of the van. The manufacturer, GM, requested that the case be dismissed due to the spoliation of the evidence and the inability of its expert to determine the exact cause and origin of the fire

24

in performing the investigation he would have performed had the Plaintiff retained the van to allow the opportunity to review the same and investigate the fire throughly. Id. at 441-442. In Smedley, the Court concluded that the relevant evidence was irrevocably lost by the actions of the insurer and concluded that the trial court abused its discretion in not dismissing the case. Id. at p. 443. The Court stated that although dismissal precluded an adjudication on the merits, such a consequence was unavoidable in the present case. Significantly, the Court noted that the case was basically a subrogation claim brought by the same company that ordered the destruction of the items that would have been crucial evidence in the company's action. See also, Southern Home Ins. Co. v. Boatwright, 231 Ala. 198, 164 So. 102, 106-7 (Ala. 1935) ("There is no principle better settled than that the spoliation or an attempt to suppress material evidence by a party to a suit, favorable to an adversary, is a sufficient foundation for an inference that the claim of such party is unjust or fraudulent.")

In Thompson v. Gardner, 889 So. 2d 596 (Ala. Civ. App. 2004) EIFS (i.e. synthetic stucco) defendants moved for summary judgment alleging spoliation of evidence where the Plaintiff allowed destruction of EIFS material. Plaintiff argued his expert's report and his photographs were available. Id. At 608 The EIFS experts, however, testified they could not form an opinion as to cause. Id. Referring to the application of five factors in analyzing a spoliation of the evidence issue, the Alabama Court of Civil Appeals affirmed the trial court's summary judgment for the defendants stating that the resolution of the dispute would have been possible if the Plaintiffs had notified the defendants before the destruction of the evidence. Id. at 610 Considering the applicable factors in this case, summary judgment is appropriate. Pioneer's president certainly knew the subject

equipment was "the evidence", any lack of culpability by Plaintiff does not preclude a finding of willfulness or intentional failure on Plaintiff's part, it is fundamentally unfair that Auto-Owners was deprived of the opportunity to have the equipment examined by an expert and there is no alternative source of the information disclosed by Plaintiff. Id. at 608-9. Where, as here, the destroyed evidence is necessary to determine causation, summary judgment for the defendant is appropriate. Id. at p. 610.

Plaintiff's assertion that he was authorized by an independent agent, who is not a party to this action, and has not been shown to have any authority to authorize such destruction (and who vehemently denies authorizing such destruction), and Plaintiff's assertion that the items stored in "just" a "corner" of his shed and were thrown away because the space "was needed for Christmas" does not excuse Pioneer's actions. Just as the insurer's actions in "just... not want[ing] to accrue any more charges for having the van stored" in Smedley, Pioneer's destruction of the items which are the subject of this action, just because it needed the space for Christmas, does not excuse Pioneer's deliberate disposal of the items which are now the subject of its claim. Pioneer's amended complaint is, therefore, due to be dismissed, and summary judgment is due to be entered in favor of Auto-Owners finding as a matter of law that Plaintiff is not entitled to coverage under the subject policy for the items which are the subject of Plaintiff's action.

    **c.**    **As A Matter Of Law Plaintiff Has Failed To Comply With Its Duties Under The Policy And/Or Conditions Precedent To Coverage Under The Policy, And Auto-Owners Is Entitled To Summary Judgment In Auto-Owners' Favor**

In this case, the undisputed evidence is that a Catastrophe (CAT) Loss Notice was submitted on behalf of Pioneer Telephone Services to Auto-Owners on September 17,

2004, which stated roof damage, water damage to the inside, antenna's broken off. See, AO00113; see also, B-Depo. of Reaves at 158 L14, 166 L23-167 L 8-L 12; C-Depo. of Barrett at p. 66 L 9-23; 67 L 1-L 12. Auto-Owners promptly assigned the investigation and adjustment of the loss to GAB Robins on September 20, 2004, and a representative of the adjuster (GAB Robins) contacted the insured on September 21, 2004. G-AO00150. See, B-Depo. of Reaves at p. 176 L 11-L 21    The representative of GAB Robins, Phillip Gauthier, performed an inspection of Plaintiff's premises on September 23, 2004. id. at L 15-23 According to Plaintiff, Mr. Gauthier advised him that he was only inspecting the structure. See, A-Depo. of Williamson at p. 239 L 20-240 L 3; 247 L 15-L18; 262 L 10-L 23. Thus, the Plaintiff was fully aware that Mr. Gauthier was not inspecting the personal property or inventory damage which Plaintiff apparently alleged. See, id. Furthermore, Mr. Williamson did not provide any documentation regarding contents damage until much later. See, Depo. of Williamson at p. 254 L 1-19; 259 L 7-L 22.

It was not until November 8, 2004 that Bill Reaves of Auto-Owners learned of alleged damage to personal property and inventory of the insured while Mr. Reaves was at the office of the local independent agent and was handed several documents. See, B-Depo. of Reaves at p. 165 L 18-L20; 182 L 15-183 L 7.    The undisputed evidence in the record reflects that Mr. Reaves met with Mr. Williamson on November 15, 2004, within a week of having been presented with documents relating to damage personal property and inventory. It is undisputed that at that time the insured had set aside the damaged property and inventory in a corner of a storage shed and this is where the subject items were viewed by Mr. Reaves

It is undisputed that between November 15, 2004 and December 16, 2004 Mr.

27

Williamson proceeded to dispose of all of the alleged damaged personal property and inventory which was being stored. This is undisputed because it is undisputed that engineer, Larry Dewberry contacted Mr. Williamson of Pioneer Services and was advised that the property had been discarded. This is evidenced by Mr. Dewberry's communication will Bill Reaves of Auto-Owners on December 16, 2004 that the property had been thrown away. Bill Reaves also wrote the insured regarding the disposal of the equipment on December 20, 2004. See, G-AO00205 L 7-9; F-102.

Under these circumstances and facts, Auto-Owners is entitled to summary judgment as a matter of law in Auto-Owners' favor due to Pioneer's failure to comply with its duty under the policy to set aside the damaged property and to make it available for Auto-Owners' inspection. The policy at issue provided that Pioneer Telephone Services had, *inter alia*, the following duties:

**3.    Duties In The Event Of Loss Or Damage**

    **a.**    You must see that the following are done in the event of loss or damage to Covered Property:

***

        **(4)**    Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

        **(5)**    At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed

28

**(6)**    As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records

This precise issue was considered by the Supreme Court of Arkansas in <u>Village</u>

<u>Market, Inc. v. State Farm Gen. Ins. Co.</u>, 970 S. W. 2d 243, (Ark 1998) wherein the Court

stated:

On appeal, Village Market argues that at the very least, fact questions exist as to whether it breached any of its duties to provide State Farm prompt notice or to retain the damaged property for inspection. ...

We need not reach the notice issues, as we hold that the trial court was correct in granting summary judgment to State Farm due to Village Market's failure to retain the damaged property for inspection. The policy issue provided that Village Market had, among other things, the following duties in the event of loss: 3. Duties in the event of loss. You [the insured] must see that the following are done in the event of loss to covered property:

***

D.    Take all reasonable steps to protect the covered property from further damage by an insured loss If feasible, set the damage property aside and in the best possible order for examination.

***

F    Permit us to inspect the property and records proving the loss.

***

29

> When viewing the evidence in the light most favorable to
> Village Market, the evidence still shows that Village Market
> could have set aside the damage compressors. .. Based on
> these facts, we hold that State Farm was entitled to summary
> judgment as a matter of law due to Village Market's failure to
> comply with its duty under the policy to set aside the damaged
> property and to make it available for State Farm's inspection

Id. at 246-247, aff'd, in part and rev'd in part, 975 S. W. 2d 86 (Ark. 1998) (reversing

only attorney fee award to insurer).

Plaintiff was aware that his first discussions with Auto-Owners regarding damage

to equipment was on November 15, 2004  Despite the express policy provisions, the fact

that Plaintiff had not been paid for the allegedly lost property,  nor had any agreement upon

the value of the property been reached, Plaintiff proceeded to dispose of the property

before December 16, 2004  It is undisputed the Plaintiff did not speak with Mr. Reaves or

anyone employed by Auto-Owners before disposing of the property between November

15, 2004 and December 16, 2004.

As a matter of law, Pioneer Telephone Services breached its contractual duty to

retain the property for examination and inspection, failed to protect the covered property

from further damage, failed to set the damaged property aside and in the best possible

order for examination, and failed to permit inspection as was reasonably required -- all

being conditions precedent to recovery. See, Village Market, supra; see also, Kanellis v.

Pacific Indem. Co., 917 So. 2d 149, 154 (Ala. Civ. App. 2005) (there is a presumption that

the insured is familiar with the provisions of its insurance policy and acquainted with its

contents). Thus, Auto-Owners is entitled to summary judgment as a matter of law due to

Pioneer Telephone Services' failure to comply with its duties under the policy to set aside

the damaged property and to make it available for Auto-Owners' inspection.[9]

### III.    Auto-Owners Is Entitled To Entry Of Summary Judgment In Auto-Owners Favor As To Plaintiff's Claim Alleging Bad Faith

In order to prevail on a claim of bad faith failure to pay the Plaintiff must prove: a) an insurance contract between the parties and a breach thereof by the Defendant; b) an intentional refusal to pay the insured's claim; c) the absence of any reasonably legitimate or arguable reason for that refusal (i.e., the absence of a debatable reason); d) the insurer's actual knowledge of the absence of any legitimate reason; e) if the intentional failure to determine the existence of a lawful basis is relied upon, the Plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim. National Security Fire & Cas. Co. v. Bowen, 417 So. 2d 179, 183 (Ala. 1982) Requirements (a) through (d) represent the "normal" case. See, State Farm Fire & Cas. Co. v. Slade, 747 So. 2d 293 (Ala. 1999). Requirement (e) represents the "abnormal" case. See, id. A bad faith claim, whether pursued under the first or second prong of the tort ultimately depends upon whether there is a debatable reason for denying the claim. See, Gulf Atlantic Life Ins. Co. v. Barnes, 405 So. 2d 916 (Ala. 1981). No matter how badly the investigation of the claim was conducted, if, in fact, the insurer had knowledge of a debatable reason for denying the claim at the time it denied

---

[9]The fact that Plaintiff testified (over the vehement denial of his independent agent's testimony) that his independent agent told him he could dispose of the property, such statements could not impose liability upon Auto-Owners. See, Carolina Cas. Ins. Co. v. Ms. Deanna's Child Care Med. Net, LLC, 869 So. 2d 1169, 1176 (Ala. Civ. App. 2003) (an independent agent can never impose liability upon the agent's principal, and representations that are not authorized and an agent's apparent authority must be based on the conduct of the principal/insurer and not on the conduct of the agent). Furthermore, South Central Agency has been dismissed in this action and thereby exonerated of perpetrating any wrong against Plaintiff

the claim, the insurer has a right and, arguably, a responsibility to challenge the claim. Thus, Plaintiff has two available methods by which Plaintiff can establish a bad-faith refusal to pay an insurance claim. Plaintiff can prove the requirements necessary to establish a "normal" case, or Plaintiff can prove that one or more of the insurer's actions consists of bad faith in an "abnormal" case.

### a.    Auto-Owners Is Entitled To Entry Of Summary Judgment In Auto-Owners' Favor As To Any Claim Alleging "Normal" Bad Faith

Auto-Owners set forth in the previous section of this brief (Section B. II.) the uncontroverted facts demonstrating as a matter of law that there was no breach of the insurance contract by Auto-Owners. Thus, as a matter of law, Pioneer cannot establish that element of a "normal" bad faith claim. McDole v. Alfa Mut. Ins., 875 So. 2d 279, 285 (Ala. 2003) (bad faith refusal to pay claim fails as a matter of law when the underlying breach of contract claim fails as a matter of law). To establish a claim for bad faith, there must be a breach of a known duty and not simply bad judgment or negligence. See, Singleton v. State Farm & Cas. Co., 928 So. 2d 280, 283 (Ala. 2005). There must be substantial evidence of a dishonest purpose and breach of a known duty and not a mere showing of non-payment. See, Id. In order for a party to demonstrate bad faith, there must be substantial evidence of non-payment without any reasonable ground for dispute. See, Nat. Sec. Fire & Cas. Co. v. Bowen, 417 So. 2d 179, 183 (Ala. 1982).

The facts of this case including, *inter alia*, Mr. Reaves inspection of the contents/equipment allegedly damaged, Pioneer's breach of conditions of the policy and hasty destruction of the equipment, Auto-Owners' requests for and review of information, investigation and payment of the structure claim and request for inspection by an engineer,

and a request for and results of a lightning report all demonstrate an arguable and debatable reason for denial of the claim. See, Sherrin v. Northwestern Nat'l Life Ins. Co., 2 f. 3d 373, 380 (11th Cir. 1993) ("As a general rule, when a fact issue exists as to the validity of the insurance claim, the bad faith claim should not be submitted to [a] jury and summary judgment for the defendant is proper.") see also, Koch v. State Farm fire and Cas. Co., 565 So. 2d 226, 231 (Ala. 1990) (In a 'normal' bad faith case a bad faith claim must fail if Plaintiff is not entitled to a judgment as a matter of law on the contract claim).

The undisputed facts of this case which are set forth in Section A, p. 1-17, infra, and are adopted by reference demonstrate that Auto-Owners promptly undertook the investigation of Pioneer's claim. Auto-Owners assigned an adjustment service (GAB) to undertake the inspection of Plaintiff's property. The inspection of Pioneer's structure damage was undertaken within one week of Hurricane Ivan. Pioneer was subsequently paid for the damage to its structure. The undisputed evidence in the record demonstrates that Pioneer did not prepare documentation regarding the damage to its contents until sometime late in October, 2004. The undisputed evidence is that Auto-Owners' claim representative, Bill Reaves, did not receive documentation regarding Pioneer's contents claim until November 8, 2004. Auto-Owners undertook the prompt investigation of Pioneer's contents/equipment claim in that Mr. Reaves met with Mr. Williamson of Pioneer within approximately a week on November 15, 2004 to discuss the contents damage. It is undisputed that Mr. Reaves had questions concerning the documentation provided by Pioneer and requested additional documentation from Pioneer. Mr. Reaves, subsequent to his meeting with Mr. Williamson, also contacted an engineer, Larry Dewberry, to conduct further inspection of Pioneer's equipment; however, when Mr. Dewberry contacted Pioneer

he was advised that Pioneer had disposed of the equipment which was the subject of Pioneer's contents claim. See, Adams v. Auto-Owners Ins. Co., 655 So. 2d 969, 972 (Ala. 1995) ("Certainly these two investigations [by an adjuster and an engineer] provides reasonably arguable and legitimate reasons for denying [Plaintiff's] claims").

In this case, Plaintiff can establish none of the elements required to prove a "normal" bad faith case. In this case there has been no breach by Auto-Owners of the insurance contract between Plaintiff and Defendant. As set forth in the preceding section of this brief In fact, the only breach of the insurance contract herein was by the Defendant in failing to comply with the conditions contained in the policy regarding the retention of the allegedly damaged property. Not only is the Plaintiff not entitled to a judgment as a matter of law for the Plaintiff on the contract claim, Auto-Owners is entitled to a judgment as a matter of law in its favor that Plaintiff breached the terms of the insurance contract and failed to comply with the conditions contained in the policy

There is absolutely no evidence an of intentional denial and refusal to pay Plaintiff's claim without any reasonable legitimate or arguable reason for that refusal. The undisputed evidence is that Plaintiff unilaterally disposed of the property which was the subject of its claim for loss of personal property and inventory. Even after Auto-Owners was made aware of Plaintiff's unilateral breach of the conditions of the insurance policy, Auto-Owners requested a lightning strike report to determine the presence of lightning in the proximity of Plaintiff's premises at the time of the alleged loss suffered by the Plaintiff. Following the receipt of the result of the lightning strike report demonstrating that there was no lightning strike within five miles of Plaintiff's premises, Auto-Owners properly denied the remaining portion of Plaintiff's claim. Under these circumstances Plaintiff has wholly failed

34

to demonstrate substantial evidence of non-payment without reasonable ground for dispute, or breach of a known duty  The foregoing undisputed facts demonstrate that, as a matter of law, there was a violation of the condition by the Plaintiff, Auto-Owners was not obligated under the policy to pay, and there existed an arguable and debatable reason for a denial of coverage.  Auto-Owners is, therefore, entitled to summary judgment in Auto-Owners' favor as to any claim by Plaintiff of "normal" bad faith.

**b.    Auto-Owners Is Entitled To Entry Of Summary Judgment In Auto-Owners' Favor As To Any Claim Alleging "Abnormal" Bad Faith**

As stated above, in an "abnormal" bad faith case, the Plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.  In order to do so, the insured must show (1) that the insurer failed to properly investigate the claim or to subject the results of the investigation to a cognitive evaluation and review and (2) that the insurer breached the contract for insurance coverage with the insured when it refused to pay the insured's claim  See, State Farm Fire & Cas. Co. v. Slade, 747 So  2d 293 (Ala. 1999)

Following learning of Pioneer's disposal of the equipment which was the subject of its contents claim, Mr. Reaves contacted the Auto-Owners Home Office and advised it of the status of Pioneer's contents claim.  Mr. Reaves also sought additional documentation from Pioneer, but Pioneer basically resubmitted the documents it had previously submitted. In fact, although the documents purported to be from Tel-Com, the evidence of record demonstrates that the documents were basically prepared by the shared secretary of Pioneer and Tel-Com. Mr. Reaves also communicated with Auto-Owners' Home office regarding the claim. In an additional effort to substantiate Pioneer's claims, Auto-Owners also obtained a lightning strike report which indicated an absence of any lightning during

35

the time of the alleged loss by Pioneer and did not support its contents claim

Facts similar to those presented in this case were considered by the Alabama Court of Civil Appeals in USAA v. Hobbs, 858 So. 2d 966 (Ala. Civ. App. 2003)  In Hobbs an adjuster with USAA asked Hobbs to provide a description of property allegedly lost. After receiving the information, the adjuster had concluded there were inconsistencies associated with the claim. An investigator with USAA interviewed Hobbs. The investigator for USAA testified that there was an "air of uncertainty regarding his claim."  Id. at 976. A senior claims examiner for USAA testified that Hobbs' claim was reviewed by senior personnel. The senior claims examiner also stated that USAA did not deny Hobbs' claim based on one reason but rather considered a number of reasons and looked at the "whole picture"  Id. The senior claims examiner testified that Hobbs failed to substantiate his loss, failed to produce receipts and other verifying information. See, id.

In holding that USAA was entitled to a pre-verdict judgment as a matter of law on Plaintiff's bad-faith claim of "abnormal" bad faith, the Alabama Court of Civil Appeals stated:

> The record indicated that USAA conducted a thorough and extensive investigation of Hobbs' claim. USAA took several in-debt statements from Hobbs, including an evaluation under oath. USAA interviewed other witnesses and followed up with the shipping company involved  Mazac research the items based on the description provided by Hobbs in an attempt to substantiate Hobbs' claim. USAA made repeated requests to Hobbs to provide the name and identity of any dealer or vendor from whom he had purchased the items, as well as to provide any original receipts to substantiate the claim. Finally, the evidence indicates the decision to deny Hobbs' claim was a collective one made after the claim was evaluated by the legally department and several management-level employees of USAA. We conclude that Hobbs failed to establish that USAA failed to properly investigate his claim or submit it to a cognitive evaluation before denying it. Accordingly, USAA was

36

entitled to a pre-verdict JML on the bad-faith claim under the "abnormal" case scenario.

Id. at 978; see also, Kern v. Standard Fire Ins. Co., 2006 WL 1982115 (M. D. Ala. 2006).

In this case, Mr. Reaves undertook the investigation of Pioneer's contents claim. Mr. Reaves met with Mr. Williamson. Mr. Reaves also contacted an engineer who also contacted Mr. Williamson. See, Turner v. State Farm Fire and Cas. Co., 614 So. 2d 1029 (Ala. 1993) (examination of property by insurer fulfilled insurer's duty and entitled insurer to summary judgment on insured's "abnormal" bad faith claim). Mr. Reaves reviewed documentation provided by Pioneer and inquired of others including an independent agent regarding the nature of the documentation provided by Pioneer. After being advised that Pioneer had discarded the items which were the subject of its contents claim, Mr. Reaves also contacted the Auto-Owners Home Office where the matter was reviewed. Following discussions with the Auto-Owners' Home Office, Mr. Reaves also undertook to obtain a lightning strike report to attempt to substantiate the cause of the loss alleged by Pioneer. When the lightning report did not substantiate Pioneer's claim, and considering the other facts, the decision was made by Auto-Owners to deny Pioneer's claim. Thus, the destruction of the equipment by Plaintiff and the lightning report revealing no lightning alone show that Auto-Owners had debatable reasons for denying Pioneer's claim. See, id.; see also, Morton v. Allstate Ins. Co., 486 So. 2d 1263 (Ala. 1986) (even where insured is entitled to coverage, uncertainty as to the amount of the insurer's liability established a debatable reason for denying at least that portion of payment and entitling insurer to judgment as a matter of law as to bad faith claim).

37

The evidence in this case overwhelmingly demonstrates that Auto-Owners conducted a proper investigation of Pioneer's claim and subjected the results of the investigation to a cognitive evaluation and review. As a matter of law, Pioneer has failed to produce substantial evidence that Auto-Owners failed to properly investigate its claim or submit it to a cognitive evaluation before denying it. See, Kern, supra, 2006 WL 1982115 at *5-6. Summary judgment is, therefore, due to be entered in favor of Auto-Owners and against Pioneer as to any claim by Pioneer for "abnormal" bad faith.

## IV.    Alternatively, Auto-Owners Is Entitled To Summary Judgment As To All Claims Of Plaintiff Seeking Punitive Damages

Auto-Owners has set forth in the prior sections of this brief the reasons that summary judgment should be entered in favor of Auto-Owners with regard to Plaintiff's claims for breach of contract and bad faith. The prior sections of this brief are adopted by reference herein.

Even if this Court were to determine that summary judgment in favor of Auto-Owners was not proper as to Plaintiff's bad faith claim, it is nonetheless clear that summary judgment in favor of Auto-Owners is due to be granted as to the issue of punitive damages.

Pursuant to §6-11-20, Code of Alabama, 1975, punitive damages could not be awarded in this action unless it was proven by *clear and convincing* evidence that Auto-Owners consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to Plaintiff. There is no evidence of a bad faith failure to pay that was gross, oppressive or malicious and committed with the intention on the part of the Auto-Owners of depriving Plaintiff of property or legal rights or otherwise causing injury. See, APJI 18.09. The record is absent of any evidence demonstrating deliberate or intentional

misconduct on the part of Auto-Owners that would justify a punitive damage award.

## C.    CONCLUSION

For the reasons set forth in the foregoing brief and statement of undisputed facts, summary judgment is due to be entered in favor of Defendant, Auto-Owners Insurance Company, and against Plaintiff, Pioneer Services, Inc., pursuant to rule 56 of the *Federal Rules of Civil Procedure*. In the event the Court determines that this action may not be disposed of in its entirety by entry of summary judgment in favor of Auto-Owners, Auto-Owners Insurance Company requests that this Court enter partial summary judgment in favor of Defendant, Auto-Owners Insurance Company, and against Plaintiff, Pioneer Services, Inc., as to those issues, claims, damages and/or actions upon which the Court determines summary judgment in favor of Auto-Owners Insurance Company is proper.

Dated this the _28th_ day of _February_, 2007.

Respectfully submitted,

ROGER S. MORROW (MOR032)

JOEL H. PEARSON (PEA019)
**ATTORNEYS FOR DEFENDANT**
**AUTO-OWNERS INSURANCE COMPANY**

**OF COUNSEL:**

**MORROW, ROMINE & PEARSON, P.C.**
**P.O. Box 4804**
**Montgomery, AL 36103-4804**
**Telephone: (334) 262-7707**
**Facsimile: (334) 262-7742**
**Email:      rsmorrow@mrplaw.com**
**              jhpearson@mrplaw.com**

## CERTIFICATE OF SERVICE

I hereby certify that on  *February 28, 2007* , I electronically filed the foregoing with the Court using the CM/ECF system, and I hereby certify that I am serving the foregoing document to the following:

Leland Enzor, Jr , Esq.          Harry P. Hall, II, Esq.
Enzor & Enzor                    Farmer, Price, Hornsby & Weatherford, LLC
P.O. Box 339                     P O  Drawer 2228
Andalusia, AL 36420              Dothan, AL 36303

Respectfully submitted,

JOEL H. PEARSON (PEA019)
Attorney for Defendant
Auto-Owners Insurance Company
Morrow, Romine & Pearson, P.C.
P O  Box 4804
Montgomery, Alabama 36103-4804
Telephone: (334) 262-7707
Fax: (334) 262-7742
E-mail: jhpearson@mrplaw.com