# EXHIBIT "I"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| PIONEER SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO.: 2:06-cv-377-WKW |
| v. | ) | |
| | ) | |
| AUTO-OWNERS INSURANCE | ) | |
| COMPANY, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

STATE OF Florida   )
COUNTY OF Bay   )

### AFFIDAVIT OF LARRY F. DEWBERRY, P. E.

Before me, the undersigned authority, personally appeared Larry F. Dewberry, P.E., who being by me first duly sworn doth depose and says as follows:

My name is Larry F. Dewberry, P.E. I am over the age of 19 years of age. I have a Masters of Science in Electrical Engineering from the Georgia Institute of Technology and a Bachelor of Electrical Engineering from the Georgia Institute of Technology. I am a member of the Institute of Electrical and Electronic Engineers, Society of Automotive Engineers, and the National Fire Protection Association. I am licensed Professional Engineer in the States of Alabama, Florida, Georgia and Mississippi. A copy of my Vita is attached. I have personal knowledge of the facts contained in this affidavit.

On December 9, 2004, we were contacted by Mr. Bill Reaves with Auto-Owners Insurance Company to inspect equipment at Pioneer Telephone Services related to a

lightning and water claim. We were also provided with a list of the allegedly damaged items.

We contacted Mr. Williams, the owner, shortly after we received the assignment. He stated personnel at his insurance agency told him he had permission to discard the equipment and he had done that. We contacted Mr. Reaves and told him the equipment was no longer available for inspection. We have been provided a lightning scan that indicates that at the alleged time of the loss, no lightning activity was present within 5 miles of the facility.

Since we were unable to inspect the equipment, we were unable first to confirm the existence of the equipment, and second, if the equipment existed, we were unable to confirm that it was damaged. Equipment in use at the facility could not have been damaged by lightning if no lightning activity was present within a 5-mile radius of the location of the equipment. If we assume the equipment failed at the same time, the failure could be due to an outside influence, such as a voltage transient. However, voltage transients are virtually always generated off premises on the primary side of the transformer.

We were also unable to verify the existence of equipment in storage allegedly damaged by water. This equipment allegedly consisted of electronic circuit boards used in telephone systems. However, if we assume the equipment existed and it was contained in the boxes normally used to ship that equipment, the normal mode for packing that type equipment would dictate that the equipment inside the boxes was itself contained in plastic or foil bags, making it impervious to water exposure. The fact that the cardboard boxes were waterstained does not render the equipment inside the

box unusable. However, even if we assume the equipment was exposed to water, electronic equipment that is not energized is rarely damaged by exposure to fresh water. The equipment could have been tested by its respective manufacturers. Manufacturers usually have an exchange program that allows them to receive boards that are reportedly not operational and for a fee, they can exchange them for new or rebuilt boards.

All the equipment was reportedly discarded before the matter could be resolved. At the time of the alleged loss, no lightning activity was present within five miles of the facility. The alleged damage to the stored equipment was limited to relatively minor exposure to water while the equipment was contained in the manufacturers' shipping boxes

It is our opinion the equipment in use at the facility at the time of the alleged loss was not damaged by lightning. It is also our opinion that if the reportedly stored equipment was contained in the usual boxes provided by the manufacturer and the equipment contained in the boxes was packed in a manner that is customary for the manufacturer, the equipment would not have been damaged by water. It is further our opinion that electronic equipment that is not energized does not usually sustain damage when exposed to fresh water

The statements contained in this affidavit are based on my education, knowledge, experience, and the facts and information provided to me, and are true and correct to the best of my knowledge, information and belief.

LARRY F. DEWBERY, P E

STATE OF Florida )

COUNTY OF Bay )

Sworn to and subscribed to before me this the 28th day of February 2007.



BOBBIE GADDIS
Notary Public - State of Florida
My Comm. Expires Aug 21, 2007
Commission # DD 497580
Bonded By National Notary Assn.

(SEAL)

Bobbie Gaddis
Notary Public
My Commission Expires: 8-21-07

# FRANKLIN ENGINEERING

Franklin Technical Services, Inc

800-433-8539
(850) 763-2905
Fax (850) 872-8080
P.O. BOX 15894
PANAMA CITY, FL 32406

Larry F. Dewberry, P.E.

Florida P.E.       #28503
Georgia P.E.       #14512
Alabama P.E.       #14606
Mississippi P.E.   #12149

Education:

MSEE - 1973: Georgia Institute of Technology
 BEE - 1971: Georgia Institute of Technology

Member:

Institute of Electrical and Electronic Engineers
Society of Automotive Engineers
National Fire Protection Association

Experience:

January, 1984 to Present: Senior Engineer, Franklin Engineering. Providing consulting services in the areas of failure analysis and reconstruction. Services are provided by myself and other consultants. My specialties are accident reconstruction, accident computer simulation, fire cause determination, and lightning damage analysis.

May, 1977 to January, 1984: Manager, Swimmer Delivery Vehicle (SDV) electronic and electrical subsystems, Naval Coastal Systems Center (NCSC), Panama City, Florida. Responsible for the design, production, and documentation of all electrical and electronic subsystems used in the SDV program. Other responsibilities included acting as the Federal government technical representative during contract performance and serving as a consultant to other Naval activities.

July, 1974 to May, 1977: Electronic engineer, NCSC, for MK11 underwater breathing apparatus. Responsibilities included design, development, and configuration control of communication and life support monitoring equipment. Developmental work resulted in my being issued Patent Nos 4013992 and 4164981.

July, 1973 to June, 1974: Electronic engineer, NCSC. Developed computer simulation and conceptual design of underwater vehicle control systems. Co-authored the

Larry F. Dewberry, P.E.     Page 2

published report, "The Analysis of Longitudinal Control Systems for Underwater Vehicles", which detailed the results of this project.

June, 1972 to June, 1973: Graduate student at Georgia Institute of Technology; graduate research assistant for Dr. M. Milner. Developed monitoring system for measurement of human nerve impulses during normal walking. Graduated Master of Science Electrical Engineering

March, 1971 to May, 1972: Field engineer, Schlumberger Offshore Services. Performed electronic measurements on exploration offshore drilling platforms to evaluate presence of oil or gas. Supervised two or three technicians and interpreted the results of the tests.

June, 1969 to March 1971: Undergraduate at Georgia Institute of Technology. Graduated, Bachelor of Electrical Engineering

March, 1969 to June, 1969: Substation test helper, Georgia Power Company. Assisted test engineers in inspection of the instrumentation, transformers, and circuit breakers in power distribution substations.

April, 1967 to March, 1969: Specialist 5th Class, Calibration Technician, U S. Army. Calibrated and repaired electronic and physical measuring devices. Tour of duty included six months training in the United States followed by 17 months overseas in Thailand, Vietnam, Taiwan, and Okinawa

September, 1964 to January 1967: Undergraduate, Georgia Institute of Technology. Drafted into U S. Army during sophomore year.

Personal Data:

Date/Place of Birth: January 18, 1946; Bremen, Georgia

Height: 5'6"

Weight: 145 lbs.

Caucasian

Marital Status: Married to Sarah B. Dewberry

Children:
Timothy F Dewberry, born December 6, 1983
Julie A. Dewberry, born November 14, 1985