# EXHIBIT "C"

Case 2:06-cv-00377-WKW-TFM    Document 21-4    Filed 03/28/2007    Page 1 of 4

Page 1

IN THE FEDERAL COURT OF
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CIVIL ACTION NUMBER
2:06CV 377-WKW

PIONEER SERVICES, INC.,
   Plaintiff,
vs
AUTO OWNERS INSURANCE
COMPANY,
   Defendant.

VIDEOTAPE DEPOSITION TESTIMONY OF:
   BILL REAVES

January 25, 2007
10 a.m.

COURT REPORTER:
APRIL R. BENDINGER, CSR

Page 2

1       STIPULATION
2     IT IS STIPULATED AND AGREED by and
3 between the parties through their respective
4 counsel that the deposition of BILL REAVES may
5 be taken before April R. Bendinger, Notary
6 Public, State at Large, at the Law Offices of
7 Morrow, Romine & Pearson, 122 South Hull Street,
8 Montgomery, Alabama 36103, on January 25, 2007,
9 commencing at approximately 10 a.m.
10    IT IS FURTHER STIPULATED AND AGREED
11 that the signature to and the reading of the
12 deposition by the witness is waived, the
13 deposition to have the same force and effect as
14 if full compliance had been had with all laws
15 and rules of Court relating to the taking of
16 depositions.
17    IT IS FURTHER STIPULATED AND AGREED
18 that it shall not be necessary for any
19 objections to be made by counsel to any
20 questions, except as to form or leading
21 questions and that counsel for the parties may
22 make objections and assign grounds at the time
23 of trial or at the time said depositions is

Page 3

1 offered in evidence, or prior thereto.
2    In accordance with Rule 5(d) of the
3 Alabama Rules of Civil Procedure, as amended,
4 effective May 15, 1988, I, April R. Bendinger,
5 am hereby delivering to MR. HARRY HALL the
6 original transcript of the oral testimony taken
7 January 25, 2007, along with exhibits.
8    Please be advised that this is the same
9 and not retained by the Court Reporter, nor
10 filed with the Court.

Page 4

       INDEX

EXAMINATION BY:         PAGE
Mr. Hall             25
Certificate          280

     INDEX OF EXHIBITS

PX-10  (File)         55

1 (Pages 1 to 4)

Page 157

1  A.  Eight, maybe ten hours.
2  Q.  Any damage to your house?
3  A.  No.
4  Q.  Do you recall how many claims you
5  had come in as a result of Ivan?
6  A.  No, I do not.
7  Q.  Was it more than 100?
8  A.  There were thousands of claim that
9  came in.
10  Q.  For territory four?
11  A.  The claims aren't assigned to a
12  specific territory during a storm situation.
13  Q.  I guess what I'm asking: Within
14  territory four, do you have an idea of how many
15  claims were made for damages from Ivan?
16  A.  Hundreds.
17  Q.  How do they get assigned out under
18  a situation where you've got that many claims
19  coming in? Is it any different than the normal
20  way they get assigned to you?
21  A.  They're assigned to an independent
22  adjuster. A DO inspects the damages.
23  Q.  How are those independent

Page 158

1  adjusters selected?
2  A.  It's usually predetermined that a
3  certain adjuster -- adjusting firm will handle a
4  certain county or a certain territory.
5  Q.  They get contacted right after the
6  storm, I assume; is that right?
7  A.  Yes.
8  Q.  In our depositions we took earlier
9  this month, South Central Agency described a
10  packet of loss claim forms that are sent
11  prepared to them with all of their insureds'
12  names and information on them. Are you familiar
13  with that practice?
14  A.  It's called a preprinted loss
15  notice.
16  Q.  And the preprinted loss notice --
17  are you involved in getting those to the agents
18  in your territory?
19  A.  No, I'm not.
20  Q.  Does it happen automatically?
21  A.  It's done at corporate.
22  Q.  Do you help process those in any
23  way?

Page 159

1  A.  The loss notices?
2  Q.  Yes, sir.
3  A.  Yes.
4  Q.  How? What do you do?
5  A.  When they're returned to us and a
6  claim is being made, we review the claim,
7  determine which adjuster -- adjusting firm it's
8  assigned to, and put a reserve and open the
9  coverages.
10  Q.  Okay. Are the claims somehow
11  tracked by your territory? Is there a way to
12  see how many came out of a county or a territory
13  or a given area?
14  A.  I don't know if there is or not.
15  I don't know.
16  Q.  Are the claim numbers that are
17  assigned -- is there a formula for how that
18  claim number is assigned? Does one part of it
19  mean territory four, one part means what year it
20  came in or something like that?
21  A.  The last digits on the claim
22  number indicate the year that the claim was
23  reported.

Page 160

1  Q.  Turn over to the front of Exhibit
2  10 for me. And that would be that dash 04;
3  right?
4  A.  That's correct.
5  Q.  Okay. The rest of the numbers, do
6  they mean anything to you?
7  A.  37 is the branch number, which is
8  the Montgomery branch.
9  Q.  What about the 4873?
10  A.  That's the claim -- the internal
11  guts of the claim number.
12  Q.  Is that sequential? Do those go
13  in order?
14  A.  They're in order.
15  Q.  So that's the 4,873rd claim for
16  areas 37 in the year 2004?
17  A.  That's correct.
18  Q.  Okay. Thank you.
19  MR. PEARSON: Let me put something
20  on the record. I think that actual page is Bate
21  stamped AO 72. Just for the record, it's not an
22  Auto Owners page, but a page run by my
23  secretary.

40 (Pages 157 to 160)

American Court Reporting
toll-free (877) 320-1050

Page 169

1  that's stamped across the top?
2      A.   Yes, it is.
3      Q.   From that, would you agree that
4  that document was delivered to Auto Owners on
5  September 17, 2004?
6      A.   I can't say that it was or was
7  not.
8      Q.   How would you find out?
9      A.   You may could look in the computer
10 system and see when the claim was set up.
11     Q.   All right. Well --
12     A.   The reason I'm saying that is I
13 don't know if the date -- we'd just received a
14 new fax machine, so I don't know if the date had
15 been set in the machine or not at this time.
16 That machine came in within a day or two of
17 Hurricane Ivan. The old machine was getting
18 old, and we knew we would soon be getting a lot
19 of losses. So I can't verify the date -- that
20 the date was set correct in that.
21     Q.   Is there anything in the claims
22 file that you could look at to determine the
23 date that the file got set up or the claim was

Page 170

1  reported?
2      A.   I don't know of anything. There
3  may be something in there. I don't know.
4      Q.   All right. What date do you think
5  that the claim was reported?
6      A.   It was probably reported on the
7  17th.
8      Q.   Okay. Do you have any reason to
9  believe it wasn't report on the 17th?
10     A.   I don't know of anything that
11 would make me think that it was not reported at
12 the time.
13     Q.   Certainly wasn't reported before
14 then because it didn't happen until the 16th, at
15 night?
16     A.   I would think that would be
17 accurate.
18     Q.   All right. Did you ever talk to
19 Ashley Sasser about this catastrophe loss
20 notice?
21     A.   No, I didn't.
22     Q.   Did you review it?
23     A.   Not on the 17th.

Page 171

1      Q.   Did you review it ever?
2      A.   Yes, I did.
3      Q.   What did you do with it when you
4  reviewed it?
5      A.   I just looked at it to see what
6  was claimed as damaged on it and what the
7  coverages were.
8      Q.   And how do you see what was
9  claimed of damage? Are you saying look to see
10 if the building is damaged or it's a contents
11 claim? Is there more detail to this than these
12 two pages?
13     A.   That's all there is. There's a
14 general description in the top --
15     Q.   Oh, I see.
16     A.   -- where they list a little more
17 specific than building and contents, and none,
18 light, medium, and heavy damages
19     Q.   Was the damage for both of the
20 buildings under this policy indicated as medium?
21     A.   Yes, they were.
22     Q.   Were the contents damage for both
23 of those noted as medium?

Page 172

1      A    They were.
2      Q.   All right. When was the next time
3  something happened on this claim after this loss
4  notice was faxed up on the 17th of September?
5      A.   It was assigned shortly after to
6  GAB.
7      Q.   All right.
8      A    In Mobile.
9      Q.   Why was GAB assigned this file?
10 Any idea?
11     A.   They were assisting us in handling
12 the overwhelming amount of claims that we
13 received.
14     Q.   Did Auto Owners use anybody
15 besides GAB Robbins?
16     A.   Yes, we did.
17     Q.   Who else?
18     A.   Catastrophe Specialists, or CSI, I
19 think, is the abbreviation.
20     Q.   All right. Do you know when
21 something was done by GAB Robbins or when the
22 next action was taken? After the claim form was
23 faxed in on the 17th and was then assigned

43 (Pages 169 to 172)

www.AmericanCourtReporting.com
January 25, 2007