**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **PIONEER SERVICES, INC.,** | ) |
| | ) |
| **PLAINTIFF,** | ) |
| | ) |
| **V.** | )    **2:06cv377-WKW** |
| | ) |
| **AUTO-OWNERS INSURANCE COMPANY,** | ) |
| **INC., et al,** | ) |
| | ) |
| **DEFENDANT.** | ) |
| | ) |

**PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

Comes now the Plaintiff in the above referenced matter and in response to

Defendant's Motion for Summary Judgment would file its response as set out below:

**STATEMENT OF FACTS**

In addition to the facts claimed as "undisputed" by the Defendant, the Plaintiff

would supply the following undisputed facts developed during discovery.

1.      On September 17, 2004 Pioneer submitted a catastrophe loss notice which

notified Auto-Owners of damage to Pioneer's building and the contents thereof. (See G-

A00113 of Defendant's submissions in support of its Motion for Summary Judgment)

2.      Auto-Owners own policy for claims handling requires that within 30 days

of receipt of the claim notice that Auto-Owners provide the insured with a notice of

what is needed to present their claim and what constitutes a satisfactory proof of loss

for that claim. (Worley depo P 50 L 6 to P 52 L 8, See AO0953) Auto-Owners did not

comply with this requirement and did not inform Pioneer what would constitute a satisfactory proof of loss for its contents claim. (Worley depo P 52 L 4 -7)

3.      Bill Reaves received the documents supporting the contents claim on November 8, 2004.  Mr. Reaves did not review the figures presented in the affidavits supplied by Pioneer nor did he review it closely enough to notice any discrepancies or errors. (Reaves depo P 190 L 13 to P 192 L 9)

4.      After Pioneer provided lightning and water damage affidavits to Auto-Owners, Bill Reaves inspected the damaged equipment. At the time of the inspection, Mr. Reaves had had possession of the estimates for damages to Pioneer's contents for a week. (See para. 13-14 of Defendant's Statement of Undisputed Facts)

5.      During the inspection process Mr. Reaves agreed that he was allowed as much time and access to the equipment as he wanted and that Pioneer placed no restrictions on his inspection or his ability to take any of the damaged equipment that he wanted. (Reaves depo P 202 L 11 to 203 L 21)  Mr. Reaves was allowed to photograph as much of the equipment as he wanted and was allowed to open boxes, unwrap items and move any item he wanted. (Reaves depo P 202 L 11 to 203 L 21, P 205 L3-7) At no point during this inspection did Mr. Reaves ask Pioneer's president, Jimmy Williamson, to explain what any of the equipment was, correlate the lists of damaged equipment to the items in the lightning affidavit and water damage affidavit or to otherwise explain the affidavits supplied to support Pioneer's claim. (Reaves depo P 207 L23 to P 208 L 5)

2

6.      Mr. Reaves did not decide to contact Franklin Engineering until 3 weeks after his inspection of the damaged equipment. (See para 16 of Defendant's Statement of Undisputed Facts)

7.      Mr. Reaves sent his December 20, 2004 letter to Pioneer requesting Pioneer…"provide us with outside documentation and evidence for the damage, along with the salvage value." This request was directed at the contents claim and the equipment Mr. Reaves had previously inspected. (Reaves depo P 213 L 19-22)

8.      In response to the request in the letter of December 20, 2004, Pioneer submitted estimates and affidavits from Tel-Com Services, Inc. concerning the damages to the contents made the basis of Pioneer's claim.  (Reaves depo P 220 L13 to P 221 L 5) Mr. Reaves agreed these estimates and affidavits from Tel-Com Services, Inc. constituted documentation from an outside source concerning damages claimed by Pioneer as requested in his letter to Pioneer of December 20, 2004. (Reaves depo P 244  L 20 to P 245 L 16)  Once Mr. Reaves received the outside documentation from Tel-Com Services, Inc. documenting the losses claimed by Pioneer, he placed the estimates in the claims file and did nothing with them. (Id, Reaves depo P 268 L 4-22)

9.      As of January 25, 2007 Mr. Reaves knew of no request from Auto-Owners that Pioneer or Tel-Com Services, Inc. provide more details about the basis for their opinions in their damage affidavits or to address any concern regarding the sufficiency of the evidence submitted on behalf of Pioneer to support Pioneer's contents claim. (Reaves depo P 237 L 10 to P 238 L 23)

10.     Mr. Reaves wrote to his home office on December 21, 2004 that he was going to take a statement from Jimmy Williamson concerning the loss and the allegation that Pioneer's agent had given Pioneer permission to dispose of the damaged equipment.  (See para 23 of Defendant's Statement of Undisputed Facts)  Mr. Reaves never contacted Mr. Williamson to obtain this statement and never spoke with Mr. Williamson after the November 15, 2004 inspection of the damaged equipment. (Reaves depo  P 211 L 22 to P 212 L 6, P 212 L 18 to P 213 L 3, P 259 L 23 to P 261 L 6)

11.     Auto-Owners listed 3 paragraphs in its December 20, 2004 letter to Pioneer outlining Pioneer's responsibilities once a loss occurred.  These included paragraphs 4, 5 & 6 under "Duties In The Event Of A Loss."   Mr. Reaves agreed that Pioneer complied with the conditions outlined in the policy concerning protecting the property under paragraphs 4 and 5 as referenced in his December 20, 2004 letter. (Reaves depo P 247 L 23 to P 248 L 6, P 248 L 21 to P 249 L 21, see also AO00205-A000206)

12.     When Jimmy Williamson submitted the claim for damage to Pioneer's building and contents on September 17, 2004 he also submitted a claim notice for his personal residence. (Exhibit "A" AO00302)  When the adjuster assigned to the homeowners' claim by Auto-Owners inspected the property, he found that Mr. Williamson had been instructed by his local insurance agents to replace contents of his home damaged by lightning. (Exhibit "A" AO00307)  The adjuster on the home claim met with Mr. Williamson and reviewed the items that were replaced prior to the adjuster's inspection. These damaged items were not available for inspection as Mr.

4

Williamson had already disposed of the items per his agent's instructions. (Id) Mr. Williamson supplied the adjuster assigned by Auto-Owners to his homeowner's claim a lightning affidavit in exactly the same form as the one he supplied on behalf of Pioneer. (Exhibit "A" AO00327-AO00330, Worley depo P 174 L 11-20)  Auto-Owners accepted the Lightning affidavit from Pioneer concerning the homeowners' claim and paid policy benefits based on the claimed damages. (See para 15 of Defendant's Statement of Undisputed Facts)

13.    Pioneer is qualified to issue lightning affidavits for telephone and computer equipment and Auto-Owners has accepted Pioneer affidavits on as many as 8 other claims since Hurricane Ivan. (Reaves depo P 137 L 20 to P 140 L 11)

14.    Mr. Reaves never did anything to determine what, if any, relationship existed between Pioneer and Tel-Com Services, Inc. that might have shown a conflict of interest between Tel-Com and Pioneer. (Reaves depo P 233 L 5-17)

15.    Other than Mr. Reaves' recollection, there is no evidence to support his testimony that he instructed Mr. Williamson to preserve the damaged equipment after Mr. Reaves inspected it on November 15, 2004. (Reaves depo P251 L16-22)

16.    Auto-Owners provided Todd Worley as a Rule 30(b)(6) corporate representative who was deposed in this case.  Mr. Worley testified that paragraph 6 under "Duties In The Event Of A Loss" where the policy required the insured to allow Auto-Owners to inspect the damaged items, "as often as may be reasonably required" is a subjective part of the policy that does not mean the same thing in each claim and varies from case to case. (Worley depo P 216 L5-15)

## STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ. P. 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of "the pleadings and evidentiary record" which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The movant can meet this burden by presenting evidence showing there is no genuine issue of material fact, or by showing the non-moving party has failed to present sufficient evidence to establish an essential element of the non moving party's claim. *Celotex* at 331.

In response to a properly supported motion for summary judgment, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits, or as otherwise provided . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court's role is neither to weigh the evidence nor to find the facts; instead, it is "the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Substantive law will identify those facts which are material on motions for summary

judgment. *Id.* at 258.

The court must accept the evidence of the non-moving party as true, resolve

all doubts against the moving party, construe all evidence in the light most favorable to

the non-moving party, and draw all reasonable inferences in the non-moving party's

favor. *Hunt v. Cromartie,* 526 U.S. 541, 550-55, 119 S. Ct. 1545, 143 L. Ed. 2d 731 (1999);

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.

2d 538 (1986).   If more than one reasonable inference can be drawn, and that inference

creates a genuine issue of material fact, summary judgment is not warranted because

the trier of fact is entitled to decide which inference to believe.  *Hunt v. Cromartie,* 526

U.S. at 552; *Patterson & Wilder Const. Co., Inc. v. U.S.,* 226 F.3d 1269, 1273

(11th Cir. 2000).

## **ARGUMENT**

Contrary to the statements made by the Defendant in its Brief in Support of

Motion for Summary Judgment, this case arises over the conduct of Auto-Owners in its

refusal to honor its insurance policy with the Plaintiff.  The Plaintiff experienced a

covered loss after a hurricane in September of 2004.  Plaintiff reported this loss to its

insurance Agent who then forwarded the notice to Auto-Owners.  When Plaintiff

supplied evidence of the total value of its claim, Auto-Owners invented reasons to deny

the claim and avoid payment under Plaintiff's policy of insurance.

**I.  BREACH OF CONTRACT**

In order to prevail on a breach-of-contract claim, a Plaintiff must establish: (1) the

existence of a valid contract binding the parties, (2) his own performance under the

contract, (3) the defendant's nonperformance under the contract, and (4) resulting

damages.   State Farm Fire & Cas. Co. v. Williams, 926 So. 2d 1008, 1013 (Ala. 2005)

Auto-Owners has stipulated that there is a valid and binding contract of insurance

covering Pioneer Telephone Services, Inc.'s building and contents for the night of

September 16, 2004. (See para 15 of Defendant's Statement of Undisputed Facts)  This

satisfies part one of the Williams' test.   The second requirement is that Pioneer show

that it performed under the contract.   At no time has Auto-Owners challenged the

claim submitted by Pioneer for failure to pay premiums or ever allege that the policy

was canceled for some reason prior to the night of September 16, 2004.   There is also no

question that the breach of contract damages claimed in this matter are the $56,491.25

identified in Pioneer's affidavits and Tel-Com Services, Inc.'s affidavits reflecting the

damages to Pioneer's property. (See Exhibit "A" AO0181-AO0194, AO0128-AO0131,

AO0134-135)  These are the same documents submitted to Mr. Reaves during the

months following the claim notice to Auto-Owners.

These documents set out in great detail the items that were damaged together

with a statement showing the cause of the loss.   Auto-Owners even testified through

Todd Worley that this claim was never denied for a lack of proof of damages. (Worley

depo P 103 L 6-15)  This $56,491.25 is the amount claimed by Pioneer as benefits under

its policy of insurance with Auto-Owners that has not been paid.  The only element

required by <u>Williams </u>that is not stipulated to is the non-performance by Auto-Owners.

Pioneer obtained and has presented substantial evidence through the testimony

of Donald Dinsmore, an expert in claims handling and management, that Auto-Owners

was in breach of its policy of insurance with Pioneer.  Mr. Dinsmore has worked in the

insurance industry as an Adjuster, Field Claims Representative, Special Disaster

Supervisor, Regional Property Claims Supervisor, Large Loss Unit Manager, Hurricane

Hugo Manager and other positions. (See page 10 of Defendant's Exhibit 1 to Dinsmore's

Depositon attached as Exhibit "B") After being examined at length by counsel for Auto-

Owners, Mr. Dinsmore testified as follows;

> Q.  You've already discussed with Mr. Pearson at
> length the different terms of the commercial policy of
> insurance contract?
> A.  Yes, sir.
> Q.  And I would surmise from the lengthy discussions
> we've had today, are you familiar with the terms of that
> contract as it pertained to Pioneer Telephone Services,
> Inc. in 2004?
> A.  Yes.  Based -- I would say that I'm familiar with
> the terms of the contract having reviewed this contract
> since about 1991 and other contracts of similar since
> the early '70s and mid '70s.  The specific terms that
> were at issue here are very standardized, very common.
> Q.  And based on the information that you have found
> in the claims file that was produced on this contents
> claim, do you have an opinion as to whether the Pioneer
> Telephone Services, Inc. was entitled to be paid for
> either portion of the contents claim?
> A.  Based on my review of the claim file, it's -- I
> think I reported and testified that I believe they were
> entitled to payment on both portions.
> Q.  And the two portions are the water damage and the

electrical damage?

A.  Well, I call them both all risk areas.

Q.  Very good.

Dinsmore Depo. P 174 L1-25

The closest that Auto-Owners has come to alleging failure to perform is the allegation that Pioneer did not comply with one of the duties listed under a section of the policy labeled, "Duties In The Event Of A Loss" as seen on page 4 of Auto-Owners' Motion for Summary Judgment.   This section of the policy sets out certain things an insured is to do in the event of a loss.  Auto-Owners lists four separate paragraphs in its Statement of Undisputed Facts.  These are paragraphs 4, 5, 6 and 8.  The adjuster handling this claim for Auto-Owners testified that Pioneer complied with paragraphs 4 and 5 in his deposition. (Reaves depo P 247 L 23 to P 248 L 6, P 248 L 21 to P 249 L 21) At no time has any adjuster alleged that Pioneer violated paragraph 8 and Auto-Owners makes no reference to it so the Plaintiff will not address that paragraph for the sake of brevity.

Paragraph 6 of the Duties In the Event of a Loss section of the policy required the insured to, "As often as my be reasonably be required, permit us to inspect the property proving the loss or damage…" ( See para 1 of Defendant's Statement of Undisputed Facts)  Based on Mr. Dinsmore's testimony alone the Plaintiff has presented substantial evidence of compliance with all requirements of the policy including this paragraph.  In addition to the above, Auto-Owners' corporate representative could not testify in deposition as to exactly how many inspections of the damaged property paragraph 6

10

called for.  (Worley depo P 216 L5-15)  If the defendant doesn't know how many

inspections are reasonable, how can the Plaintiff?

Given that the defendant has stipulated to the existence of the contract and that

Plaintiff has presented substantial evidence through the testimony of Defendant's

representatives and Donald Dinsmore of the remaining elements of the Williams critera,

the motion for summary judgment on the contract claim must be denied and the

Plaintiff's contract claims should be decided by a jury since these claims are supported

by substantial evidence.

**II. SPOILATION**

The Defendant wrongfully tries to claim that the Plaintiff is barred from

pursuing its claims due to Pioneer's disposal of the damaged property.   In support of

this position the Defendant asks the court to consider cases that have very little if any

application to the present set of facts.   The Defendant cites Capital Chevrolet, Inc. v.

Smedley as authority for the proposition that a party who disposes of items that may be

the basis of a claim later are barred from bringing any claim based on conditions of the

property.   In Smedley Auto-Owners destroyed the very vehicle that was to form the

basis of a products liability claim against General Motors.   An easy distinction between

Smedley and the present case is that Pioneer allowed Auto-Owners the opportunity to

inspect, photograph, document and if they had wanted, to remove the damaged

equipment.   In Smedley, Auto-Owners destroyed the van made the basis of their

products liability action against General Motors 11 months prior to notifying GM of the

claim.   There is no comparison of the two cases after that.   If Mr. Reaves has wanted to

preserve the damaged equipment, he would have documented that request.   He never

did and consequently, Pioneer felt it had complied with the policy.   In addition to the

above, unlike in Smedley, here the Defendant could have contacted either Jimmy

Williamson or Tel-Com Services, Inc. to see what other information was available about

the damaged equipment.   Auto-Owners has never done that until it took Mr.

Williamsons' deposition in this litigation.  How can Auto-Owners claim they have been

deprived of evidence if they have not attempted to secure the evidence through other

means still available to them?

The Defendant cites Thompson v. Gardner for the same proposition as Smedley.

Thompson is even less analogous to Pioneer's claims than Smedley.   In Thompson the

Plaintiff was a homeowner who had problems with water damage due to a faulty

exterior coating on his house.   In Thompson the litigation between the parties had been

underway for two years before the Plaintiff disposed of the faulty product without

allowing the defendants to inspect it while still on the Plaintiff's home.  Unlike the

Plaintiff in Thompson, Pioneer allowed Auto-Owners full access to the damaged

equipment and permitted all forms of documentation that the insurer wanted to

perform.   There is no parallel between Thompson and the present case.   Also, contrary

to what the Defendant says, there is an alternative source of information as to the

condition of the property.   The Defendant has never attempted to discover the opinions

or the basis therefore of Tel-Com Services, Inc. concerning the damaged equipment.

Tel-Com gave affidavits concerning the condition of the damaged equipment but the

12

Defendant has continued to ignore that source and has never attempted to secure information from that source.

**III ALLEGED FAILURES TO COMPLY WITH DUTIES UNDER THE POLICY**

Once again the Defendant attempts to argue that they were not given the opportunity to inspect the damaged equipment.   Contrary to their claims, Mr. Reaves inspected the equipment on November 15, 2004 and had full access to the items made the basis of Pioneer's claim.  He photographed the equipment and had the opportunity to ask Pioneer's President any question he wanted to about the damages, the evidence forming the basis of the damage affidavits supplied to Auto-Owners or any other issues that might arise in Mr. Reaves' mind.  He did not ask any of these questions. (Reaves depo P 205 L 3 to P 208 L 5)  This stands in stark contrast to Village Market, Inc v. State Farm Gen. Ins. Co. cited by the defendant.   In Village Market  the Plaintiff was a business with a chain of grocery stores.   One of the stores suffered a malfunction to a cooling unit and had it repaired. After more than a month the Plaintiff in Village Market learned that the malfunction was due to lightning damage and made an insurance claim.  The Plaintiff in that case did not preserve any of the compressors that formed the basis of its claim.  There was evidence in Village Market that the Plaintiff could have preserved the damaged compressors but instead traded them into the manufacturer for a credit towards the replacement parts.   In Village Market the insurer never was allowed to see the damaged items and was not allowed to document their condition. As stated above, that was never the case here.  Auto-Owners had every opportunity to inspect the equipment and to document its condition.   If they had wanted to inspect it

further they were obligated to inform Pioneer so that Pioneer would be on notice of their request. (Worley depo P217 L 3-15)  Auto-Owners cannot now complain that Pioneer violated a clause of the policy when they have already agreed they failed to put Pioneer on notice of the requirements of the policy.

## IV.  BAD FAITH

A plaintiff must establish that his or her claim is either the normal case or the abnormal case of bad faith**.** To this date, the abnormal cases have been limited to those instances in which the plaintiff produced substantial evidence showing that the insurer (1) intentionally or recklessly failed to investigate the plaintiff's claim; (2) intentionally or recklessly failed to properly subject the plaintiff's claim to a cognitive evaluation or review; (3) created its own debatable reason for denying the plaintiff's claim; or (4) relied on an ambiguous portion of the policy as a lawful basis to deny the plaintiff's claim. State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 307 (Ala. 1999)  "An insurer is liable for abnormal bad faith when it intentionally or recklessly fails to conduct an adequate investigation of the facts and submit those facts to a thorough review". Mutual Service Casualty v. Henderson, 368 F.3d 1309, 1315 (11th US 2004). The Court went on to outline an extra responsibility of the insurer by stating "An insurer also has the responsibility to "marshall all of the pertinent facts with regard to its insured's claim" before denying coverage". (Id.)  see also National Insurance Association v. Stockwell**,** 829 So.2d 111, 130 (Ala. 2002**)**.  Unlike in normal bad faith claims, providing an arguable reason for denying an abnormal bad faith claim does not defeat that claim.  (Id.) see also Slade, at 315-16.

Henderson is the most current authority from the 11th Circuit Court of Appeals

concerning bad faith in Alabama.  The Henderson court considered the situation where

an insurer refused to extend coverage under its policy to defend claims against its

insured.  Specifically the Hendersons (insureds) presented to their insurer a copy of a

lawsuit filed against them as well as an amendment to the initial complaint.  There was

no date on the amended complaint and because the initial complaint was filed prior to

the policy period, the insurer declined coverage.  The Henderson court made the

following conclusion concerning the facts of that case:

> Thus it was unclear to [insurer's agent] whether the damages alleged in the
> amended complaint occurred before or after May 15, 2000, the effective date of
> coverage of the Henderson's policy.  Yet despite his uncertainty, [the agent]
> conducted no further investigation.  He did not call Mr. Henderson to ask him
> when the events alleged in the amended complaint occurred.  He did not call the
> clerk of the court to inquire when the amended complaint was filed.  He did
> nothing but rely upon the date on the original complaint.  Such an investigation
> is hardly one in which he fulfilled his duty to "marshall all of the pertinent facts
> with regard to the insured's claim" before denying coverage.
>
> Henderson at 317

The Court went on to find "While [the agent] may not have intended to injure Mr.

Henderson with his deficient investigation, he arguably investigated in a reckless

manner by failing to adequately investigate the facts and submit those facts to a

thorough review". (Id.)

In the present case Mr. Reaves has admitted, as has Defendant's corporate

representative, that no inquiry was made into the validity of the estimates or the

affidavits as to water damage or lightning damage supplied by Pioneer or Tel-Com

Services, Inc.   There is no evidence presented by Defendant that any investigation took

15

place concerning the information submitted by Plaintiff on the value of the items claimed as damaged, no investigation as to the basis of Pioneer's opinions about the cause of the damages. No investigation as to the basis of Mr. Williamson's opinion that lightning struck Pioneer's office or damaged the items listed in Pioneer's affidavits. No investigation into why Tel-Com Services had a similar address or format for affidavits. No investigation as to why Mr. Williamson thought he had been given permission to dispose of the damaged equipment.   No statement taken from Mr. Williamson even though Mr. Reaves told his superiors he was going to do that.   The Plaintiff gave notice of a claim on the morning of September 17th, 2004 by contacting his Agent, South Central Agency and having South Central Agency fill out a Loss Notice form and send it to Auto-Owners. (Para. 7 Auto-Owner's Statement Of Undisputed Facts)  Following the notice to Auto-Owners of the claim which included a notice of "medium contents damage" Auto-Owners did nothing to investigate the contents portion of the claim.  Mr. Reaves testified that the normal practice in a lightning damage claim is to send a letter with a proof of loss, a personal property inventory form and a request for estimates of damages.  (Reaves depo P 104 L 8-20)  No such correspondence was sent to Pioneer and no requests for information was mailed to Pioneer.  Instead, Pioneer was left to guess what was appropriate documentation to support its contents claim.

In deposition, Mr. Reaves testified that he took no action on and disregarded the estimates provided to him by the Plaintiff.  This is not "marshalling all of the pertinent facts" with regard to the insured's claim nor is it subjecting those facts to a

16

"cognitive review".  This is further supported by Mr. Dinsmore's testimony where he

said;

> But based on your review of the claims file and the documents listed in
> Defendant's Exhibit 2 to your deposition, do you have an
> opinion as to whether Auto-Owners acted in good faith in
> its handling of Pioneer Telephone Services, Inc.'s
> contents claim?
> MR. PEARSON:  Object to form.
> THE WITNESS:  From the perspective of an
> insurance professional -- I mean, as a claims manager
> you do review good faith claim handling and
> controversial claims.  As a claims manager I would
> say no, they did not act in good faith.
> Q.  Can you tell or do you have an opinion as to
> whether Auto-Owners had a legitimate basis to deny any
> portion of the contents claim that we've covered today?
> MR. PEARSON:  Object to form.
> THE WITNESS:  It's my opinion they did not have a
> legitimate basis to deny it because of the coverage,
> the lack of investigation and the coverage question
> handling.
> Q. Do you have an opinion as to whether Auto-Owners
> subjected this claim to a cognitive review once it had
> the documents we've talked about today?
> MR. PEARSON:  Object to form.
> THE WITNESS:  As claim manager I would think that
> by cognitive review I would think that you meant
> knowing, rational review, and that's what I was
> talking about with the home office response and so
> forth.  And, no, I don't think they did have a
> cognitive or a rational or knowing review considering
> all the facts of the coverage question and the policy
> and the claim.
> MR. HALL:
> Q.  Were there issues or facts that were ignored by
> Auto-Owners, in your opinion?
> MR. PEARSON:  Object to form.
> THE WITNESS:  Yes, there were, specifically the
>  lightning affidavit, the -- to a degree the loss
>  report itself, the inventory.
> Dinsmore depo P 174 L 4 to P 175 L 20

17

In this case Reeves said he was going to get
information directly from Williamson, and that was
correct. He didn't do it. He said he was going to do
it, but he didn't do it.
Q. Okay. And are you aware of anything that Mr.
Reeves did with the Telcom Services estimates and the
lightning affidavit?
A. Well, in his deposition he said he just put it in
the file. He disregard it.

Dinsmore depo P 177 L 3-11

Plaintiff has previously stated its position concerning the breach of contract and

said arguments should suffice to support the second prong of the test for the elements

required in an abnormal bad faith claim.

Viewing the evidence presented in light most favorable to Plaintiff as required in

considering a motion for summary judgment by Defendant, it is clear that there is

substantial evidence of Defendant's failure to honor its contract, as well as evidence of

Defendant's having committed bad faith in the handling of Plaintiff's claim.   Given that

this Court must review all evidence in light most favorable to the non-movant, the

Defendant's Motion for Summary Judgment concerning the bad faith claims as well as

the contract claim should be denied and these matters should be decided by a jury.

Respectfully submitted,


___s/ Harry P. Hall, II_____
Harry P. Hall, II (HAL053)
Attorney for Plaintiff

OF COUNSEL:
Farmer, Price, Hornsby & Weatherford, L.L.P.
P.O. Drawer 2228
Dothan, Alabama 36302
(334) 793-2424
(334) 793-6624 – Fax

## **CERTIFICATE OF SERVICE**

I hereby certify that I have on this date served a copy of the foregoing upon the following individual(s) by electronic means or by U.S. Mail postage prepaid and properly addressed on this the 24th day of April, 2007.

Joel H. Pearson
P.O. Box 4804
Montgomery, Alabama 36103-44804

__s/ Harry P. Hall, II_____
Of Counsel