# EXHIBIT "D"

Page 1

IN THE FEDERAL COURT OF
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CIVIL ACTION NUMBER
2:06CV 377-WKW

PIONEER SERVICES, INC.,

    Plaintiff,

vs.

AUTO OWNERS INSURANCE
COMPANY,

    Defendant.

---

VIDEOTAPE DEPOSITION OF TODD WORLEY

Date: March 14, 2007

Time: 10:20 a.m.

COURT REPORTER:

APRIL R. BENDINGER, CSR

Page 50

1  A. It may not even be a document, it
2  may just be the claim rep or whoever spoke with
3  the insured and told them this is what they
4  needed. Plus, in the policy itself, it tells
5  what we are going to need for proof of loss.
6  Q. Well, let me ask you: It says
7  within 30 days the insured must be advised in
8  writing or by dated notation in the file, what
9  is needed to present their claim, and what
10 constitutes a satisfactory proof of loss. Is
11 the proof of loss the document that was sent to
12 the agency or the claims notice?
13 A. No.
14 Q. That is the notice there is going
15 to be a claim, right?
16 A. Yeah, those are printed and sent
17 for every insured that agency has.
18 Q. That is to speed up getting the
19 claims process started, right?
20 A. Yes.
21 Q. This is something else?
22 A. Yes.
23 Q. This is -- there should be in

Page 51

1  writing, notice to the insured of what they need
2  to do to present their claim properly?
3     A.   Right.  Or by, again, dated
4  notation in the file.
5     Q.   Can you check to tell me if there
6  is any such notation in the file that this ever
7  happened?
8     A.   Yeah.  It looks like we contacted
9  the insured on November 16th.
10    Q.   What page are you reading from?
11    A.   This is 112.  The insured was
12 going to furnish a breakdown of components.
13    Q.   Tell me which one you read from
14 again?
15    A.   Page 112, November 16, 2004.
16    Q.   Where it says "met with insured"?
17    A.   Right.
18    Q.   It says, "Part of roof blown up"?
19    A.   Uh-huh, (affirmative).
20    Q.   Read the rest?
21    A.   It says:  Telephone system
22 components in back storage room got wet.  Also
23 claimed the phone system and building was struck

Page 52

1  by lightning.  He will furnish breakdown of
2  components including invoice prices.  I think
3  that's what that says.
4       Q.     Is there anything in writing to
5  the insured that will comply with the paragraph
6  I was reading from, from A0953?
7       A.     I cannot find anything, no.
8       Q.     Is this notation on 11/16/04, that
9  you just read, the closest thing to complying
10 with that paragraph you just read on page A0953
11 that you can find in the file?
12      A.     In writing, that is probably the
13 closest thing we have.  You know, we met with
14 the insured.  Bill spent -- I don't know how
15 much time Bill spent with him, so there is a lot
16 that was discussed that didn't get written down.
17      Q.     Doesn't the guide in your claims
18 handling guide on your response to notice of
19 claim require that you inform the insured of
20 exactly what is needed, and what constitutes a
21 satisfactory proof of loss, and that has to be
22 either in writing or by dated notation in the
23 file?

Page 103

1    A.    No.
2    Q.    Check that off our list of things
3  that need to be satisfied?
4         MR. PEARSON:  Object to the form.
5    A.    Certainly.
6    Q.    We have been through these eight,
7  and of the eight, which I know you have a form
8  we are hopefully going to get faxed over here?
9    A.    Right.
10   Q.    Of these eight, all eight have
11 been supplied to Auto Owners?
12   A.    In one way or another, yes.
13   Q.    All right.
14   A.    The claim was not denied for lack
15 of proof though.
16   Q.    All right.  Well, if Mr. Reaves
17 was of the opinion that the insured's proof of
18 loss was inadequate through some lack of detail
19 or vagueness or whatever the reason might be,
20 should he communicate that to the insured?
21   A.    He probably should, yes.  That
22 wouldn't be a basis for denial of the claim, it
23 would simply be, you know, We've got your

Page 174

1  what the insured had told him.
2      Q.    Should he have?
3      A.    Probably.
4      Q.    And if the agent had denied
5  telling the insured those things, should that
6  claim have been denied?
7      A.    Possibly. It certainly would have
8  been investigated further. Just because that
9  was the case doesn't necessarily mean that we'd
10 automatically deny it. We'd want to do further
11 investigation.
12     Q.    But you would agree that in Claim
13 Number 37692004, Auto Owners took Pioneer
14 Telephone Services, Inc.'s affidavits and
15 estimates which had less detail than those
16 supplied in the business claim as sufficient
17 proof of loss to pay this claim?
18          MR. PEARSON: Object to the form.
19     A.    I would say that particular claim
20 rep under that certain set of circumstances that
21 he was working on did, yes.
22     Q.    That's a great preface. What do
23 you mean by that?

Page 216

1   to look at number four too. It says, take all
2   reasonable steps to protect the covered property
3   from further damage by covered cause of loss.
4   If feasible, set the damaged property aside in
5   the best possible order for examination.
6       Q.   Would you agree that "as often as
7   may be reasonably required" is a subjective part
8   of the policy that doesn't give you a time limit
9   for how long you have to hold equipment?
10          MR. PEARSON: Object to the form.
11      A.   Yeah. It's the same reason when
12  we were talking about the claims handling guide,
13  why it doesn't say, if it's this kind of claim,
14  you do this and this and this. What's
15  reasonable on one claim to hold the property the
16  length of time may not be reasonable on another.
17      Q.   An insured might view a reasonable
18  length time as a different amount of time than
19  the insurance company?
20          MR. PEARSON: Object to the form.
21      A.   There is a possibility of that
22  happening.
23      Q.   That's what happened here, isn't

Page 217

1  it?
2       A.    I don't know.  I don't know what
3  the insured was thinking.
4       Q.    Well, since the clause says "as
5  often as may be reasonably required to permit us
6  to inspect the property", and the insured may
7  have a different version of what's reasonably
8  required than the insurance company, shouldn't
9  Auto Owners document any requirement that the
10 insured hold the property until something else
11 can happen?
12            MR. PEARSON:  Object to the form.
13      A.    I agree we should do that.  We
14 should document it.
15      Q.    That was not done here?
16      A.    I don't believe it's documented in
17 this particular file, no.  Again, we have Bill's
18 statement that says that he did that.
19      Q.    Why should Bill Reaves' word be
20 taken instead of Mr. Williamson's?
21            MR. PEARSON:  Object to the form.
22      A.    Well, again, in looking at the
23 overall picture of the claim, we've got to