# EXHIBIT "P"

Page 1

IN THE FEDERAL COURT OF THE
MIDDLE DISTRICT OF ALABAMA

CIVIL ACTION NUMBER
2:06CV-377-WKW

PIONEER SERVICES, INC,
  Plaintiff,
vs.
AUTO-OWNERS INSURANCE COMPANY,
  Defendant

THE VIDEOTAPED
DEPOSITION TESTIMONY OF:
WILLIAM BARRETT

February 2, 2007
9:55 a.m.

COURT REPORTER:
Gwendolyn P. Timbie, CSR

Page 2

1   STIPULATIONS
2       IT IS STIPULATED AND AGREED by and
3   between the parties through their
4   respective counsel that the deposition of
5   WILLIAM BARRETT, may be taken before
6   Gwendolyn P. Timbie, Certified Shorthand
7   Reporter and Notary Public, State at
8   Large, at the law offices of Morrow,
9   Romine & Pearson, Montgomery, Alabama, on
10  February 2, 2007, commencing at
11  approximately 9:55 a.m.
12      IT IS FURTHER STIPULATED AND
13  AGREED that the signature to and the
14  reading of the deposition by the witness
15  is waived, the deposition to have the same
16  force and effect as if full compliance had
17  been had with all laws and rules of Court
18  relating to the taking of depositions
19      IT IS FURTHER STIPULATED AND
20  AGREED that it shall not be necessary for
21  any objections to be made by counsel to
22  any questions, except as to form or
23  leading questions, and that counsel for

Page 3

1   the parties may make objections and assign
2   grounds at the time of trial or at the
3   time said deposition is offered in
4   evidence, or prior thereto.
5       Please be advised that this is the
6   same and not retained by the Court
7   Reporter, nor filed with the Court

Page 4

1           INDEX
2   EXAMINATION BY:            PAGE NO:
3   Mr. Hall                   9
4   Certificate                175
5
6           LIST OF EXHIBITS
7   EXHIBITS:                  PAGE NO:
8   Plaintiff's 11             98
9   Plaintiff's 12             166

1 (Pages 1 to 4)

**American Court Reporting**
**toll-free (877) 320-1050**

Page 117

1   MR. PEARSON: Yeah.
2   MR. HALL: I was going into a
3   question. But any other objections?
4   Q   (BY MR. HALL) All right. If
5   Pioneer Telephone removed all the -- of
6   the damaged goods that are the subject of
7   the claim and put them in a separate
8   storage facility and an adjuster looking
9   at these losses came and looked at those,
10  what should the adjuster look for? For
11  water damage and for electrical damage --
12  or lightning damage?
13  A   Is that a yes-or-no question?
14  Q   I don't think so. I said what
15  would he look for.
16  A   You said water and electrical
17  damage. I'd say yes. Water and
18  electrical damage.
19  Q   I'm sorry. I made it even
20  worse of a question. The claim involves
21  water and lightning damage --
22  A   Okay.
23  Q   -- to stock and equipment that

Page 118

1   was being used by Pioneer Telephone
2   Services. If all of the damaged equipment
3   was stored together at a facility, away
4   from covered loss -- or the risks and your
5   adjuster goes out and looks at that and
6   photographs it, what should he be looking
7   for?
8   A   Evidence of damage.
9   Q   Such as the ones you described
10  earlier?
11  A   It can be anything. Whatever
12  the evidence of damage exists. Whatever
13  it is.
14  Q   All right. And if he obtains
15  a lightning affidavit, describing the
16  damage -- or the list of damaged items,
17  would that be an appropriate basis for him
18  to determine the scope of loss?
19  MR. PEARSON: Object to form.
20  A   I don't know.
21  Q   All right. What would you --
22  A   It may or may not be. I don't
23  know.

Page 119

1   Q   What would make it not?
2   A   The content of the affidavit
3   or -- just because there's an affidavit
4   doesn't mean that -- that it's a covered
5   loss. So yeah, an affidavit would be
6   good. It's information. It sure is.
7   Q   I'm looking at a portion of
8   Plaintiff's Exhibit 10 that includes pages
9   AO199 through 204.
10  Have you ever seen these before?
11  A   I probably have.
12  Q   Well, if that document came
13  in, supporting a claim for water damage
14  and for lightning damage, what would be
15  wrong -- or is there anything wrong with
16  those documents as far as evidencing
17  damage sustained?
18  A   There is no evidence of
19  damage.
20  Q   Okay. All right. What is
21  lacking or missing from that series of
22  documents that would be necessary in order
23  to support this claim by Pioneer?

Page 120

1   A   Evidence of damage.
2   Q   All right. Such as
3   photographs?
4   A   Such as evidence of damage.
5   Whatever that would be.
6   Q   Okay.
7   A   This is a list of stuff.
8   Q   All right.
9   A   Okay. That's all it is.
10  Q   All right. So you contend --
11  or it's your position that what I've just
12  shown you, AO199 through 204, would just
13  simply be an inventory?
14  A   It's a list. I don't know if
15  that's an inventory. It's a list.
16  Q   All right. If an adjuster for
17  Auto-Owners received a list such as AO199
18  through 204 as a portion -- or as the
19  document supporting a claim for damage to
20  contents of a building, what should the
21  adjuster ask for if this is insufficient?
22  A   All of those things.
23  Q   All right. Ask for all those

30 (Pages 117 to 120)

Page 161

1  Mr Reeves, compared the list Pioneer
2  Telephone Services initially submitted to
3  these items and found them to be matching
4  up and parallel, would you agree that this
5  is a third party, verifying the water
6  damages suffered by Pioneer?
7      A   I don't know because he says,
8  because of damage done to printed circuit
9  boards. And, you know, I'm thinking that
10 if they're in a box, that's not going to
11 be right And it says it's a lightning
12 affidavit, then it says it's water
13 damage So it seems to me, he's trying to
14 cover all of his bases. So I don't know
15 what this is
16     Q   Okay Well, if an adjuster
17 got that document and didn't know what it
18 was, would it be appropriate to contact
19 the insured and tell them to submit
20 something else?
21     A   I would assume that someone
22 that received this would need to have some
23 clarification of what it is.

Page 162

1      Q   Okay And the way to do that
2  is to contact the person who submitted the
3  document?
4      A   I think that would be
5  appropriate
6      Q   And if it was confusing
7  because of saying lightning affidavit on
8  the first page and then the certification
9  on the last page by the signature saying
10 this is water damage, is that something
11 that the adjuster should contact the
12 person submitting the document to get
13 clarity about?
14     A   I think so.
15     Q   Would it be appropriate to
16 ignore that all together?
17         MR PEARSON: Object to form.
18     A   Don't know that that happened.
19     Q   Well, I'm not asking if it
20 happened. I'm asking would it be
21 appropriate to ignore it once submitted
22     A   No
23     Q   Was this claim handled

Page 163

1  properly?
2          MR PEARSON: Object to form
3      A   I don't know It could have
4  probably been handled with a little more
5  detail I don't know if it was or not
6      Q   If you were in charge of the
7  claim as the adjuster, how would you have
8  handled it differently?
9          MR PEARSON: Object to form
10     A   I would have probably sought
11 more technical detail to begin with I
12 wouldn't have let him throw the junk
13 away But apparently he did that on his
14 own.
15     Q   Who?
16     A   The owner of the property.
17     Q   Well, would you have
18 documented your request, that he preserve
19 that equipment?
20         MR PEARSON: Object to form
21     A   I don't think I have to The
22 policy speaks to that
23     Q   Where it says keep it for a

Page 164

1  reasonable period of time?
2      A   I wouldn't --
3      Q   Allow a reasonable number of
4  inspections?
5      A   As often as we want to inspect
6  it We have the right to do so
7      Q   Well, don't you think it's
8  important for the **company to tell the
9  customer how long he should hold it?
10         MR PEARSON: Object to form
11     A   Well, I think the owner should
12 assume that he should hold it until the
13 process is complete
14     Q   If the owner had three
15 different adjusters on behalf of
16 Auto-Owners look at it --
17     A   I will --
18     Q   -- do you think that would
19 have been sufficient for him to believe
20 that it had been inspected?
21         MR PEARSON: Object to form
22     A   I gave you my opinion.
23     Q   Well, you can answer my

Page 165

1  question. If he had three different
2  adjusters look --
3      A    I think, if I -- if I were
4  him -- if I were in his shoes, I would
5  hold it until the process was finished.
6      Q    All right. What if he was
7  told by his agent that it was okay to
8  throw it away?
9          MR. PEARSON: Object to form.
10     Q    Would you think it would be
11 reasonable of him to throw it away then?
12     A    No.
13     Q    So he shouldn't trust his
14 agent?
15     A    I didn't say that.
16     Q    Well, why would it not be
17 reasonable to believe his agent?
18     A    Because his agent is not
19 handling the claim.
20     Q    All right. And would it be
21 reasonable for him to throw it away after
22 three different inspections took place?
23         MR. PEARSON: Object to form.

Page 166

1      A    Not if the claim is not
2  completed.
3          (WHEREUPON, a document was
4  marked as Plaintiff's Exhibit Number 12
5  and is attached to the original
6  transcript.)
7      Q    Let me show you what I've
8  marked as Plaintiff's Exhibit 12, which I
9  believe you signed sometime back in this
10 case as discovery responses. Take a
11 moment, if you want to, and review that.
12     I'm going to pause the video while
13 you look at that.
14 (Pause in video for the witness to review
15         the document.)
16         MR. HALL: We're back on the
17 record.
18     Q    Look at the response to number
19 three for me, please. It's on page
20 eight. And question is -- starts on page
21 seven. List by claim number, policy
22 number, and insured's name claims made by
23 defendant's insureds in Covington County,

Page 167

1  Alabama, which included damage from or
2  related to water damage or lightning
3  damage, to client's home or business which
4  occurred during September of 2004.
5      Did I read that right?
6      A    Yes.
7      Q    All right. The response
8  says -- basically some objections. Would
9  you agree that that question specifically
10 could be addressed by what we talked about
11 earlier as that lost run, when you defined
12 by ZIP code and loss type what -- what
13 claims were made based on lightning or
14 water?
15         MR. PEARSON: Object to form.
16 As Mr. Hall knows, the answers to the
17 interrogatories were made by Mr. Barrett
18 on behalf of the company. The objections
19 are objections made by lawyers. To the
20 extent there are objections in that
21 response, those are objections made by
22 attorneys for the defendant.
23     Q    My question was, is that the

Page 168

1  information that we discussed that would
2  be available by printing a loss run at the
3  home office by ZIP code and loss code for
4  any given date?
5      A    Yes.
6      Q    All right. And I think, as
7  you would agree, that would not be unduly
8  burdensome because you can do it with a
9  phone call and they print it and mail it
10 to you; is that correct?
11         MR. PEARSON: Object to form.
12     A    It can be done.
13     Q    All right. Is there any way
14 that it can be more narrowly defined?
15     A    I guess you could bring it
16 down to the agency.
17     Q    Can it be -- can the searches
18 be run by agency code?
19     A    I think so.
20     Q    All right. But it can be done
21 by loss code and ZIP code and date?
22     A    I think so.
23     Q    All right. Do you know of any

42 (Pages 165 to 168)

American Court Reporting
toll-free (877) 320-1050

Page 137

1      A     Not that I recall.
2      Q     Do you know who Jimmy
3   Williamson is?
4      A     No
5      Q     If -- well, let me get these
6   ready for you first, and then I'll show
7   you
8          Are you aware of any rule or
9   guideline within Auto-Owners concerning a
10  customer preparing its own lightning
11  affidavit?
12     A     I'm sure there's not a rule,
13  but sure seems like a conflict to me
14     Q     Would it ever be appropriate
15  to pay a claim with a customer doing their
16  own lightning affidavit?
17     A     I don't think it's
18  appropriate
19     Q     All right  If a customer is
20  in -- Pioneer Telephone Services is in the
21  business of installing and maintaining and
22  repairing telephone systems for customers
23  and they have given lightning affidavits

Page 138

1   in the past to Auto-Owners and other
2   insurance companies, would it be
3   appropriate, in that circumstance, for
4   Pioneer Telephone Services to give an
5   affidavit about their own damages?
6      A     In my opinion?
7      Q     Yes, sir
8      A     No
9      Q     Okay  For the same reason as
10  you said before?
11     A     I think it's a conflict
12     Q     All right
13     A     I personally think it's
14  wrong
15     Q     Okay  And if you were an
16  adjuster and received a lightning
17  affidavit or scope-of-loss list from the
18  customer, by the customer, and you thought
19  that that was a conflict of interest, how
20  would you communicate that to the
21  customer?
22     A     If you're -- you're talking
23  about two different things.

Page 139

1      Q     I am  You're right  Let me
2   differentiate that  The list we talked
3   about earlier that had the serial number,
4   the equipment, what the equipment was, how
5   much it cost, and the total of the
6   claim -- you called that a list, I think,
7   didn't you?
8      A     I did.
9      Q     All right  All right  Is
10  that also an inventory?
11     A     I don't know
12     Q     Okay  Well --
13     A     To me, it looks like a list
14  I don't know if that's an inventory
15     Q     How is that different from an
16  inventory?
17     A     Well, an inventory -- you're
18  talking about an inventory of damaged
19  goods  This is a list of items.  It looks
20  like an invoice
21     Q     All right  Well, if --
22     A     It says it's a quote
23     Q     Okay  But --

Page 140

1      A     So that's not an inventory
2      Q     What if -- read this header
3   right here at the beginning of it
4      A     It says, lightning damage done
5   during Hurricane Ivan storm
6      Q     Replaced equipment and tested;
7   right?
8      A     That's what it says
9      Q     Okay  Now, having that
10  statement at the head of it and then going
11  down the list, does this make it closer to
12  a lightning affidavit --
13     A     No.
14     Q     -- than a list?
15     A     No
16     Q     All right.  What is it missing
17  to not be a lightning affidavit?
18     A     Technical aspects of a -- of
19  an affidavit  You can say something --
20  you can say it was run over by a truck and
21  make you a list, and you're saying the
22  same thing  It should be acceptable.
23     Q     No. I'm asking what it needs